# SCRIPTO, INC., v. CARSON, SHERIFF, et al.

No. 80.   Argued February 24, 1960.—Decided March 21, 1960.

*George B. Haley, Jr.* argued the cause for appellant. With him on the brief was *Ernest P. Rogers.*

*Joseph C. Jacobs,* Assistant Attorney General of Florida, argued the cause for appellees. With him on the brief were *Richard W. Ervin,* Attorney General of Florida, and *Sam Spector,* Special Assistant Attorney General.

MR. JUSTICE CLARK delivered the opinion of the Court.

Florida, by statute,[1] requires appellant, a Georgia corporation, to be responsible for the collection of a use tax on certain mechanical writing instruments which appel-

---

[1] The pertinent provisions of this statute are:

"212.06   Same; collectible from dealers; dealers defined; dealers to collect from purchasers; legislative intent as to scope of tax.—

"(1) The aforesaid tax at the rate of three per cent of the retail sales price, as of the moment of sale, or three per cent of the cost price, as of the moment of purchase, as the case may be, shall be

lant sells and ships from its place of business in Atlanta to residents of Florida for use and enjoyment there. Upon Scripto's failure to collect the tax, the appellee Comptroller levied a use tax liability of $5,150.66 against it. Appellant then brought this suit to test the validity of the imposition, contending that the requirement of Florida's statute places a burden on interstate commerce and violates the Due Process Clause of the Fourteenth Amendment to the Constitution. It claimed, in effect, that the nature of its operations in Florida does not form a sufficient nexus to subject it to the statute's exactions. Both the trial court and the Supreme Court of Florida held that appellant does have sufficient jurisdictional contacts in Florida and, therefore, must register as a dealer under the statute and collect and remit to the State the use tax imposed on its aforesaid sales. 105 So. 2d 775. We noted probable jurisdiction. 361 U. S. 806. We agree with the result reached by Florida's courts.

Appellant operates in Atlanta an advertising specialty division trading under the name of Adgif Company. Through it, appellant is engaged in the business of selling mechanical writing instruments which are adapted to advertising purposes by the placing of printed material thereon. In its Adgif operation, appellant does not

---

collectible from all dealers as herein defined on the sale at retail, the use, the consumption, the distribution and the storage for use or consumption in this state, of tangible personal property.

"(2) . . . (g) 'Dealer' also means and includes every person who solicits business either by representatives or by the distribution of catalogs or other advertising matter and by reason thereof receives and accepts orders from consumers in the state, and such dealer shall collect the tax imposed by this chapter from the purchaser and no action either in law or in equity on a sale or transaction as provided by the terms of this chapter may be had in this state by any such dealer unless it be affirmatively shown that the provisions of this chapter have been fully complied with."

(1) own, lease, or maintain any office, distributing house, warehouse or other place of business in Florida, or (2) have any regular employee or agent there.[2]  Nor does it own or maintain any bank account or stock of merchandise in the State.  Orders for its products are solicited by advertising specialty brokers or, as the Supreme Court of Florida called them, wholesalers or jobbers, who are residents of Florida.  At the time of suit, there were 10 such brokers—each having a written contract and a specific territory.  The somewhat detailed contract provides, *inter alia,* that all compensation is to be on a commission basis on the sales made, provided they are accepted by appellant; repeat orders, even if not solicited, also carry a commission if the salesman has not become inactive through failure to secure acceptable orders during the previous 60 days.  The contract specifically provides that it is the intention of the parties "to create the relationship . . . of independent contractor."  Each order is to be signed by the solicitor as a "salesman"; however, he has no authority to make collections or incur debts involving appellant.  Each salesman is furnished catalogs, samples, and advertising material, and is actively engaged in Florida as a representative "of Scripto for the purpose of attracting, soliciting and obtaining Florida customers" for its mechanical advertising specialties. Orders for such products are sent by these salesmen directly to the Atlanta office for acceptance or refusal. If accepted, the sale is consummated there and the salesman is paid his commission directly.  No money passes between the purchaser and the salesman—although

---

[2] Appellant Scripto does employ one salesman but he handles its regular line of products and has no connection with Adgif.  The Florida courts found that his presence was not relevant to the determination of whether appellant was included within the terms of the statute.

the latter does occasionally accept a check payable to the appellant, in which event he is required to forward it to appellant with the order.

As construed by Florida's highest court, the impost levied by the statute is a tax "on the privilege of using personal property . . . which has come to rest . . . and has become a part of the mass of property" within the State. 105 So. 2d, at 781. It is not a sales tax, but "was developed as a device to complement [such a tax] in order to prevent evasion . . . by the completion of purchases in a non-taxing state and shipment by interstate commerce into a taxing forum." *Id.*, at 779. The tax is collectible from "dealers" and is to be added to the purchase price of the merchandise "as far as practicable." In the event that a dealer fails to collect the tax, he himself is liable for its payment. The statute has the customary use tax provisions "against duplication of the tax, an allowance to the dealer for making the collection, and a reciprocal credit arrangement which credits against the Florida tax any amount up to the amount of the Florida tax which might have been paid to another state." *Id.*, at 782. Florida held appellant to be a dealer under its statute. "The application by that Court of its local laws and the facts on which it founded its judgment are of course controlling here." *General Trading Co.* v. *State Tax Comm'n*, 322 U. S. 335, 337 (1944).

The question remaining is whether Florida, in the light of appellant's operations there, may collect the State's use tax from it on the basis of property bought from appellant and shipped from its home office to purchasers in Florida for use there.

Florida has well stated the course of this Court's decisions governing such levies, and we need but drive home its clear understanding. There must be, as our Brother Jackson stated in *Miller Bros. Co.* v. *Maryland*, 347 U. S. 340, 344–345 (1954), "some definite link, some minimum

connection, between a state and the person, property or transaction it seeks to tax." We believe that such a nexus is present here. First, the tax is a nondiscriminatory exaction levied for the use and enjoyment of property which has been purchased by Florida residents and which has actually entered into and become a part of the mass of property in that State. The burden of the tax is placed on the ultimate purchaser in Florida and it is he who enjoys the use of the property, regardless of its source. We note that the appellant is charged with no tax—save when, as here, he fails or refuses to collect it from the Florida customer. Next, as Florida points out, appellant has 10 wholesalers, jobbers, or "salesmen" conducting continuous local solicitation in Florida and forwarding the resulting orders from that State to Atlanta for shipment of the ordered goods. The only incidence of this sales transaction that is nonlocal is the acceptance of the order. True, the "salesmen" are not regular employees of appellant devoting full time to its service, but we conclude that such a fine distinction is without constitutional significance. The formal shift in the contractual tagging of the salesman as "independent" neither results in changing his local function of solicitation nor bears upon its effectiveness in securing a substantial flow of goods into Florida. This is evidenced by the amount assessed against appellant on the statute's 3% basis over a period of but four years. To permit such formal "contractual shifts" to make a constitutional difference would open the gates to a stampede of tax avoidance. See Thomas Reed Powell, Sales and Use Taxes: Collection from Absentee Vendors, 57 Harv. L. Rev. 1086, 1090. Moreover, we cannot see, from a constitutional standpoint, "that it was important that the agent worked for several principals." Chief Judge Learned Hand, in *Bomze* v. *Nardis Sportswear*, 165 F. 2d 33, 36. The test is simply the nature and extent of the activities of the appellant

in Florida. In short, we conclude that this case is controlled by *General Trading Co., supra.* As was said there, "All these differentiations are without constitutional significance. Of course, no State can tax the privilege of doing interstate business. See *Western Live Stock* v. *Bureau,* 303 U. S. 250. That is within the protection of the Commerce Clause and subject to the power of Congress. On the other hand, the mere fact that property is used for interstate commerce or has come into an owner's possession as a result of interstate commerce does not diminish the protection which he may draw from a State to the upkeep of which he may be asked to bear his fair share." 322 U. S., at 338.

Nor do we believe that Florida's requirement that appellant be its tax collector on such orders from its residents changes the situation. As was pointed out in *General Trading Co.,* this is "a familiar and sanctioned device." *Ibid.* Moreover, we note that Florida reimburses appellant for its service in this regard.

Appellant earnestly contends that *Miller Bros. Co.* v. *Maryland, supra,* is to the contrary. We think not. Miller had no solicitors in Maryland; there was no "exploitation of the consumer market"; no regular, systematic displaying of its products by catalogs, samples or the like. But, on the contrary, the goods on which Maryland sought to force Miller to collect its tax were sold to residents of Maryland when personally present at Miller's store in Delaware. True, there was an "occasional" delivery of such purchases by Miller into Maryland, and it did occasionally mail notices of special sales to former customers; but Marylanders went to Delaware to make purchases—Miller did not go to Maryland for sales. Moreover, it was impossible for Miller to determine that goods sold for cash to a customer over the counter at its store in Delaware were to be used and enjoyed in Maryland. This led the Court to conclude

that Miller would be made "more vulnerable to liability for another's tax than to a tax on itself." 347 U. S., at 346. In view of these considerations, we conclude that the "minimum connections" not present in *Miller* are more than sufficient here.

The judgment is therefore                    *Affirmed.*

MR. JUSTICE FRANKFURTER, deeming this case to be nearer to *General Trading Co.* v. *State Tax Commission,* 322 U. S. 335, than it is to *Miller Bros. Co.* v. *Maryland,* 347 U. S. 340, concurs in the result.

MR . JUSTICE WHITTAKER, believing that Florida's action denies to appellant due process of law and also directly burdens interstate commerce as held in *Miller Bros. Co.* v. *Maryland,* 347 U. S. 340, and in *McLeod* v. *Dilworth Co.,* 322 U. S. 327, and adhering to his views expressed in *Northwestern Cement Co.* v. *Minnesota,* 358 U. S. 450, 477, would reverse the judgment.