44193.   INDEPENDENT PUBLISHING COMPANY v.
HAWES, Commissioner.

SUBMITTED JANUARY 9, 1969—DECIDED JUNE 13, 1969—
REHEARING DENIED JUNE 26, 1969—

*Vandiver, Barwick & Bentley, Thomas S. Bentley, John E. Talmadge,* for appellant.

*Arthur K. Bolton, Attorney General, William L. Harper, Louis F. McDonald, Assistant Attorneys General,* for appellee.

BELL, Presiding Judge. During the taxable period in question Independent was engaged in the publication of two newspapers, the Anderson Independent and the Daily Mail, in Anderson, South Carolina. The two papers had a combined daily circulation of approximately 60,000, covering portions of South Carolina, Georgia, and North Carolina. In Georgia the daily circulation of the papers was approximately 20,000, one-third of the total circulation. However, it does not appear that Independent had ever qualified to do business in Georgia.

The geographical area served by the two papers was divided into ten districts. In Georgia there were three such districts. Independent employed a circulation supervisor in each district. In turn the supervisor in each district employed numerous carriers.

Independent distributed its newspapers in Georgia by selling them at wholesale to the carriers located in the three districts. The carriers' employment contract provided "that the relationship of the carrier to the company shall be that of an independent contractor, purchasing newspapers from the company and reselling them. . ." Roughly 75 percent of the papers sold in Georgia were sent by Independent directly to subscribers by shipment through the mails. Other papers sent to Georgia were delivered in South Carolina to persons employed as independent

contractors to furnish transportation of the papers by truck to the numerous carriers in each district. These were subsequently delivered by the carriers to individual subscribers on the carriers' routes or sold by the carriers through coin-vending machines. The carriers, rather than Independent, customarily received from subscribers weekly payment for papers sent through the mails as well as for papers delivered personally by the carriers.

The district supervisors not only employed the carriers initially and worked with them in obtaining compliance with the employment contract but also actively assisted them in soliciting new subscribers. Independent furnished to carriers free sample copies of newspapers and sent form letters to homes of prospective subscribers urging them to contact the district supervisor for subscriptions. In addition Independent frequently sent crews of personnel into Georgia districts to solicit new subscribers.

*Code Ann.* § 92-3402a (a) provides: "Every purchaser of tangible personal property at retail in this State shall be liable for a tax thereon at the rate of three per cent. of the sales price thereof. Said tax shall be paid by the purchaser to the retailer making such sale . . . and said retailer shall remit same to the State Revenue Commissioner. . . Every person making a sale or sales of tangible personal property at retail in this State shall be a retailer and a dealer as defined in this Chapter and shall be liable for a tax thereon at the rate of three per cent. of such gross sale or gross sales, or the amount of taxes collected by him from his purchaser or purchasers, as hereinafter provided, which ever is greater." Ga. L. 1951, pp. 360, 362 as amended by Ga. L. 1960, pp. 153, 154. " 'Sale' means any transfer of title or possession, or both . . . of tangible personal property." *Code Ann.* § 92-3403a (B) ; Ga. L. 1951, pp. 360, 363.

*Code Ann.* § 92-3403a (C, 1, d) (Ga. L. 1953, p. 199) authorizes the Commissioner to treat some wholesale transactions as retail sales and to make regulations requiring certain sellers to collect sales tax on wholesale transactions. That provision defines the term "sale at retail" to include: "Sales of tangible personal property to persons for resale when because of the operation of the business or its very nature or the turnover of so-called independent contractors or the lack of a place of business

in which to display a certificate of registration, or the lack of a place of business in which to keep records or the lack of adequate records, or because such persons are minors or transients, or because such persons are engaged in essentially service businesses, or for other reason there is likelihood that the State will lose tax funds due to the difficulty of policing such business operations."

Implementing the broad provisions of *Code Ann.* § 92-3403a (C, 1, d), the Commissioner promulgated this rule: "Publishers and distributors of newspapers, magazines and other periodicals shall collect and remit the tax imposed by this Act from the carrier route newspaper boys, street salesmen, and other persons to whom said publishers and distributors sell said newspapers, magazines and other periodicals."

To preclude avoidance of the sales tax where enforcement directly against the retail sale is not practicable, *Code Ann.* § 92-3402a (b) imposes a complementary use tax: "Upon the first instance of use, consumption, distribution, or storage within this State of tangible personal property purchased at retail outside this State, the owner or user thereof shall be a dealer hereunder and shall be liable for a tax at the rate of three percent of the cost price or fair market value thereof, whichever is the lesser: Provided there shall be no duplication of the tax and subject to the credit hereinafter authorized for like taxes previously paid in another State." Ga. L. 1951, pp. 360, 362, as amended by Ga. L. 1960, pp. 153, 154.

Note that the provisions cited above as *Code Ann.* § 92-3402a (a) and (b) (Ga. L. 1951, pp. 360, 362) were couched in different language during the first portion of the taxable period, prior to the 1960 amendment (Ga. L. 1960, pp. 153, 154). However, a seller's liability was the same under the Act of 1951 and the Act of 1960. For the effect of the amendment see *Undercofler v. Capital Automobile Co.,* 111 Ga. App. 709, 712 (143 SE2d 206).

The Act expressly imposes the duty of tax collection on non-resident sellers as follows: " 'Dealer' also means and includes every person who solicits business either by representatives or by the distribution of catalogs or other advertising matter and by reason thereof receives and accepts orders from consumers in

the State of Georgia, and such dealer shall collect the tax imposed by this Chapter from the purchaser." *Code Ann.* § 92-3404a (8) (Ga. L. 1953, pp. 191, 192).

Independent makes no assault against the constitutionality of the 1953 amendment (*Code Ann.* § 92-3404a (8); Ga. L. 1953, pp. 191, 192) or of any other portion of the Sales and Use Tax Act. The attack is leveled against the assessment itself, and our jurisdiction is limited to the question whether the assessment amounts to an unconstitutional application of statutory provisions which we must assume are valid.

The effect of the quoted administrative regulation, which was in force throughout the taxable period pursuant to the authority of *Code Ann.* § 92-3403a (C, 1, d), was to bring the sales to route carriers within the definition of retail sales for purposes of either the sales tax or the use tax imposed by the Act. If sales were completed in Georgia, sales tax provisions were applicable. If sales were completed in South Carolina, then the papers were "purchased at retail outside this State" so as to invoke the application of *Code Ann.* § 92-3402a (b) upon the first instance of use in Georgia. For purposes of the tax imposed by this section, use by the subscribers was equivalent to use by the route carriers who purchased the papers from Independent.

"Of course, no state can tax the privilege of doing interstate business. . . That is within the protection of the Commerce Clause and subject to the power of Congress. On the other hand, the mere fact that property is used for interstate commerce or has come into an owner's possession as a result of interstate commerce does not diminish the protection which he may draw from a state to the upkeep of which he may be asked to bear his fair share." General Trading Co. v. Tax Commission, 322 U. S. 335, 338 (64 SC 1028, 88 LE 1309). "It was not the purpose of the Commerce Clause to relieve those engaged in interstate commerce of their just share of state tax burdens, merely because an incidental or consequential effect of the tax is an increase in the cost of doing the business. Western Live Stock v. Bureau, 303 U. S. 250, 254. Not all state taxation is to be condemned because, in some manner, it has an effect upon commerce between the states, and there are many forms of tax whose burdens, when

distributed through the play of economic forces, affect interstate commerce, which nevertheless fall short of the regulation of the commerce which the Constitution leaves to Congress. . . Taxation of property, shipped interstate, before its movement begins, or after it ends, is not a forbidden regulation." McGoldrick v. Berwind-White &c. Co., 309 U. S. 33, 46 (60 SC 388, 84 LE 565, 128 ALR 876).

The assessment, insofar as it represented use taxes pursuant to *Code Ann.* § 92-3402a (b) was imposed not upon the operations of interstate commerce, but upon the privilege of use after commerce was at an end. The rate of taxation (three percent of the cost price to the purchaser) was non-discriminatory, being the same as that provided for the tax upon sales completed in Georgia. *Code Ann.* § 92-3402a (a).

The case of McLeod v. J. E. Dilworth Co., 322 U. S. 327 (64 SC 1023, 88 LE 1304) is distinguishable, as in that case Arkansas sought to impose a *sales* tax upon a sale completed in Tennessee, an event which occurred outside the jurisdiction of the taxing state. The first instance of use was a taxable event occurring in Georgia.

"Things acquired or transported in interstate commerce . . . may be subjected, when once they are at rest, to a non-discriminatory tax upon use or enjoyment. · . . A tax upon the privilege of use or storage when the chattel used or stored has ceased to be in transit is now an impost so common that its validity has been withdrawn from the arena of debate." Henneford v. Silas-Mason Co., 300 U. S. 577, 582 (57 SC 524, 81 LE 814).

No principle is better settled than that the taxing power of a state is limited to objects of taxation within its jurisdiction. New York, L. E. & W. R. Co. v. Pennsylvania, 153 U. S. 628, 646 (14 SC 952, 38 LE 846). "But visible territorial boundaries do not always establish the limits of a state's taxing power or jurisdiction. . . If there is some jurisdictional fact or event to serve as a conductor, the reach of the state's taxing power may be carried to objects of taxation beyond its borders." Miller Bros. Co. v. Maryland, 347 U. S. 340, 342 (74 SC 535, 98 LE 744). However, in order to satisfy the requirement of due

process, there must be "some definite link, some minimum connection, between a state and the person, property or transaction which it seeks to tax." Id., p. 345.

In Miller Bros. Co. v. Maryland, 347 U. S. 340, supra, the Supreme Court held that Maryland could not impose an obligation to collect use taxes upon a Delaware seller which had no retail outlets or sales solicitors in Maryland. And in National Bellas Hess v. Dept. of Revenue of Illinois, 386 U. S. 753 (87 SC 1389, 18 LE2d 505), the court held that Illinois could not impose the duty of use tax collection upon a Missouri seller whose only connection with Illinois customers was by common carrier or by mail. However, those cases are plainly distinguishable from this one.

"A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society. . . . The sole constitutional test for a case like the present one . . . is whether the state has given anything for which it can ask return." Wisconsin v. J. C. Penney Co., 311 U. S. 435, 444 (61 SC 246, 85 LE 267).

Independent employed representatives in Georgia who exploited the market by solicitation on a regular and systematic basis. The extent of Independent's activity here is vividly demonstrated by the fact that approximately one-third of the newspapers which it sold, 20,000 daily, flowed into this State. We think the essential nexus between Independent and Georgia is obvious and that the substantial benefits derived from carrying on business in this State clearly support the burden of tax collection.

The Supreme Court has upheld the power of a state to impose liability upon an out-of-state mail-order seller to collect local use taxes where the seller maintained local retail stores although the outlets were not directly related to the transactions involved. Nelson v. Sears, Roebuck & Co., 312 U. S. 359 (61 SC 586, 85 LE 888, 132 ALR 475); Nelson v. Montgomery Ward & Co., 312 U. S. 373 (61 SC 593, 85 LE 897). However, it is not essential

to the jurisdiction of the taxing state that the seller maintain local offices or stores; the court has reached the same result where the seller merely employed local agents to solicit orders. Felt & Tarrant Mfg. Co. v. Gallagher, 306 U. S. 62 (59 SC 376, 83 LE 488) ; General Trading Co. v. Tax Commission, 322 U. S. 335, supra; Scripto, Inc. v. Carson, 362 U. S. 207 (80 SC 619, 4 LE2d 660).

Independent contends that an issue of fact exists as to whether or not its circulation supervisors and any others soliciting subscriptions in Georgia were its agents. The seller apparently assumes the position that those persons, as well as the truck drivers and carriers, were independent contractors and therefore did not furnish the link essential to justify imposition of the burden of collecting taxes levied by the Act. This contention is without merit. A similar argument was made in Scripto, Inc. v. Carson, 362 U. S. 207, supra. The Supreme Court replied: "The formal shift in the contractual tagging of the salesman as 'independent' neither results in changing his local function of solicitation nor bears upon its effectiveness in securing a substantial flow of goods into Florida. . . To permit such formal 'contractual shifts' to make a constitutional difference would open the gates to a stampede of tax avoidance. . . Moreover, we cannot see, from a constitutional standpoint, that it was important that the agent worked for several principals. . . The test is simply the nature and extent of the activities of the appellant in Florida." P. 211.

There is no duplication of sales or use taxes, and an offsetting credit is allowed for like taxes previously paid in another state. *Code Ann.* §§ 92-3402a (b), 92-3412a. The ultimate liability for the use tax is laid upon the purchaser, not the seller, whose role is merely that of collecting agent for the state. For this service the seller is compensated provided the taxes due are not delinquent at the time of payment. *Code Ann.* § 92-3425a. "To make the distributor the tax collector for the State is a familiar and sanctioned device. Monamotor Oil Co. v. Johnson, 292 U. S. 86, 93-94." General Trading Co. v. Tax Commission, 322 U. S. 335, 338, supra.

With respect to newspapers which were not delivered through

the mails directly to subscribers but were brought by truckers employed by Independent and delivered first to route carriers, we need not decide whether sales were completed in South Carolina so as to make the use tax applicable or in Georgia so as to make the sale the taxable event. Compare McGoldrick v. Berwind-White Co., 309 U. S. 33, 50-53, supra. The practical effect is the same whether the seller was required to collect sales tax or use tax on papers personally delivered to subscribers by the route carriers. As we have already determined, the first instance of use was a constitutionally taxable event, and it occurred in Georgia even if the sale itself did not.

It is fundamentally a due-process question whether a state has jurisdiction to impose on a nonresident seller the burden of collecting an impost to become due by the purchaser upon a future taxable event occurring within the state. However, the courts have generally treated it as a question coming under the Commerce Clause, and we consider that it was aptly raised here.

The assessment did not offend the United States Constitution. Thus it was not error to grant summary judgment for the Commissioner.

*Judgment affirmed. Eberhardt and Deen, JJ., concur.*