

# THE ATTORNEY GENERAL

## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

May 27, 1970

Honorable Robert S. Calvert
Comptroller of Public Accounts
Capitol Building
Austin, Texas

Opinion No. M-642

Re: The interpretation and
application of the
Franchise Tax, Articles
12.01 et seq., V.A.T.S.,
as amended by Acts 1969,
61st Leg., 2nd Called
Session, Ch. 1, Art. 7,
p. 5, 39, such amend-
ments to be effective
May 1, 1970.

Dear Mr. Calvert:

You have requested our opinion on three questions involv-
ing the interpretation of Article 12.02, Title 122A, Taxation-
General, Vernon's Civil Statutes, of the Franchise Tax Act,[1]
which defines gross receipts from business done in Texas and
provides for the determination of the taxable capital of a
corporation doing both in-state and out-of-state business.
These questions were stated in your request as follows:

"An out-of-state corporation, not authorized
to transact business in this State, and which has
no inventory or office in this State regularly
solicits citizens of this State by means of travel-
ing sales representatives. Goods ordered pursuant
to purchase orders obtained by the traveling sales-
men are shipped directly from out-of-state to the
purchaser in this State.

"Another out-of-state corporation, also not
qualified to transact Texas business and not own-
ing any inventory or office in this State, regularly
solicits citizens of this State by mail. Goods
shipped pursuant to sales orders growing out of
this solicitation were shipped directly from out-of-
state to purchasers in this State.

---

1. Acts 1969, 61st Leg., 2nd C.S. Ch. 1, ART. 7, p. 5, 39.

"Please advise whether either corporation is doing business in this State under the provisions of Article 12.02.

"In this connection, please also advise whether this office is legally correct in concluding that a corporation whose franchise tax liability is substantially increased solely by reason of the provisions of Article 12.02(1)(b)(1) is entitled to employ the special methods set out in Section (2) of Article 12.02 on the basis that the allocation and apportionment provisions of the Section (1) of the Article do not fairly represent the extent of its business activities."

The provisions of Article 12.02, supra, pertinent to this opinion are:

"(1) (a)  Each corporation liable for payment of a franchise tax shall determine the portion of its entire taxable capital taxable by the State of Texas by multiplying same by an allocation percentage which shall be the percentage relationship which the gross receipts from its business done in Texas bear to the total gross receipts of the corporation from its entire business.

"(b)  For the purpose of this Article, the term 'gross receipts from its business done in Texas' shall include:

(1)  Sales of tangible personal property when the property is delivered or shipped to a purchaser within this State, regardless of the F.O.B. point or other conditions of the sale, . . .

. . .

"(2)  If the allocation and apportionment provisions of Section (1) of this Article do not fairly represent the extent of the taxpayer's business activity in Texas, the taxpayer may petition for and the Comptroller may permit, in respect to all or any part of the taxpayer's business activity, if reasonable:  (Emphasis added.)

"(a)   separate accounting;

"(b)   the inclusion of one or more
additional factors which will fairly repre-
sent the taxpayer's business activity in
Texas; or

"(c)   the employment of any
other method to effectuate an equitable
allocation and apportionment of the tax-
payer's capital."

The franchise tax is levied in Article 12.01, Title 122A,
Taxation-General, Vernon's Civil Statutes, on the privilege of
doing business in Texas in the corporate form; it is measured
by the total capital structure of the corporation.  Where a
corporation is engaged in both in-state and out-of-state
business, apportionment of the tax base is required in order
to tax only that capital attributed to a corporation's busi-
ness activities in Texas.

The corporate activities referred to in your request
will be discussed in the order presented and referred to respect-
ively as ABC Corporation and XYZ Corporation in this opinion.
ABC Corporation employs its sales representatives in Texas to
solicit sales and obtain purchase orders for its products
which are then shipped to purchasers in Texas from out-of-state
locations.  Such destination sales constitute interstate com-
merce; they would not have been considered as business done in
Texas before the 1969 amendment to Article 12.02, supra, which
provides for the inclusion of "destination" sales in Sec-
tion (1)(b)(1).  The decision in Hump Hairpin Manufacturing Co.
v. Emerson, 258 U.S. 290 (1922), illustrates that interstate
business may properly be used in the measure of a state tax.

Even though an apportionment formula may allocate a
portion of the proceeds from interstate commerce to the State,
there must be also sufficient contacts or nexus between the
corporations sought to be taxed and the state seeking to impose
a tax before the state will have jurisdiction to tax the corpora-
tion.  National Bellas Hess, Inc. v. Department of Revenue of
the State of Illinois, 386 U. S. 753, (1967).  Before Article
12.02, supra, can apply to a corporation this jurisdictional
requirement must be met.  What constitutes sufficient contacts
or nexus to give the state power to impose its taxing statutes
must be determined from decisions of the federal and state
courts applying federal law.  A violation of the Due Process

Clause of the United States Constitution results from an attempt to impose a tax on a corporation without sufficient nexus to subject it to the taxing jurisdiction of the State. National Bellas Hess, Inc. v. Department of Revenue of the State of Illinois, supra.

ABC Corporation has sufficient nexus with the State of Texas to bring it within the jurisdiction of the Texas taxing statutes; therefore, its sales of property delivered to purchasers in Texas amount to "business done in Texas" within the terms of Article 12.02, supra. A recent decision of the U. S. Supreme Court on taxing jurisdiction of a State supports the above conclusion. In National Bellas Hess, Inc. v. Department of Revenue of the State of Illinois, supra, the Court states:

> "The case in this Court which represents the furtherest constitutional reach to date of a State's power to deputize an out-of-state retailer as its collection agent for a use tax is Scripto, Inc. v. Carson, 362 U.S. 207. There we held that Florida could constitutionally impose upon a Georgia seller the duty of collecting a state use tax upon the sale of goods shipped to customers in Florida. In that case the seller has '10 wholesalers, jobbers, or "salesmen" conducting continuous local solicitation in Florida and forwarding the resulting orders from that State to Atlanta for shipment of the ordered goods.' 362 U.S., at 211."

The facts in Scripto, Inc. v. Carson, 362 U.S. 207, (1962) are essentially the same as those of the corporation referred to in the first question presented by the Comptroller.

Article 12.02(1)(b)(1) includes receipts from certain types of sales in the definition of "gross receipts from business done in Texas":

> "(1)  Sales of tangible personal property when the property is delivered or shipped to a purchaser within this State, regardless of the F.O.B. point or other conditions of the sale, reduced by the deduction, if applicable, allowable under Subsection (c) of this Section (1)."

The type of transaction referred to may include both intra-state and interstate business. Where a corporation is subject to the taxing jurisdiction of this State, that portion of its interstate business reflected by its receipts from "destination sales" into Texas are properly allocable to Texas as business done in this State. Smoot Sand and Gravel Corp. v. District of Columbia, 261 F.2d 758 (D.C.Civ. 1958), cert denied, 359 U.S. 968 (1959); Lever Bros. Co. v. District of Columbia, 1953, 92 U.S.App. D.C. 147, 204 F.2d 39. The "Destination Sales" factor is one of the factors prescribed in the Uniform Division of Income for Tax Purposes Act adopted in 1957 and approved by the American Bar Association. It is also one of the factors prescribed by the Multistate Tax Compact, adopted by Texas as Article 7359a, Vernon's Civil Statutes, used to apportion income to the various states.[2]

As stated above, ABC Corporation, employing salesmen in the State of Texas, has sufficient "nexus" with this State to subject it to the taxing jurisdiction of the State and to the terms of Article 12.02(1)(b)(1). Therefore, it is "doing business in Texas" within the terms of Article 12.02.

One further observation regarding this corporation employing sales representatives in Texas is warranted by the decision of the Court of Civil Appeals, in Ramsey v. Investors Diversified Services, 248 S.W.2d 263 (Civ.App. 1952, n.r.e.). The corporation in that case employed commission agents in Texas but did not have any other contacts with the State. The court held that the corporation was doing business in Texas and that the sales negotiated and loans solicited by said agents were local activities amounting to "business done in Texas". The Court relied substantially on the fact that the local activities of the agents were the initial steps of the transactions that resulted in the consummation of the sales and loans involved. The Court, in effect, held that the negotiation and solicitation were the substance of the transaction and the business was local in nature rather than interstate business. The decision also relied heavily on the general rule that a corporation performing a substantial part of its business in a state, continuous in character, is doing, carrying on, or engaging in business therein. 20 C.J.S. Corporations 8 1829, page 46.

---

2.   Art. 7359a, Art. IV, subd. 16, V.C.S.

Hon. Robert S. Calvert, Page 6      (M- 642)

The Ramsey case, supra, supports our view that a corpora-
tion that employs sales representatives in Texas under the
stated conditions, is subject to its taxing jurisdiction.  It
also supports the position that sales made to Texas purchasers
by foreign corporations may be considered as "business done in
Texas".  This definition of Texas business is now expressly
included as "business done in Texas" as we have noted above.
Article 12.02 (1)(b)(1), supra.

The second question, restated, also involves "doing
business in Texas" under Article 12.02 with reference to XYZ
Corporation:

> "Another out-of-state corporation, also not
> qualified to transact Texas business and not own-
> ing any inventory or office in this State, regular-
> ly solicits citizens of this State by mail.  Goods
> shipped pursuant to sales order growing out of this
> solicitation were shipped directly from out-of-state
> to purchasers in this State."

Article 12.02 applies only to corporations subject to
taxation in Texas within the jurisdictional limitations dis-
cussed above.

The facts of XYZ Corporation's business in Texas are the
same as those presented in National Bellas Hess, Inc. v. The
Department of Revenue of the State of Illinois, supra, wherein
the Court held:

> "In order to uphold the power of Illinois
> to impose use tax burdens on National in this
> case, we would have to repudiate totally the
> sharp distinction . . . between mail order
> sellers with retail outlets, solicitors, or
> property within a State, and those who do no
> more than communicate with customers in the
> State by mail or common carrier as part of a
> general interstate business.  But this basic
> distinction, which until now has been generally
> recognized by the state taxing authorities, is
> a valid one, and we decline to obliterate it."

It is clear that the corporation without any connection
with Texas other than through the use of the mail and common

carriers does not have sufficient "nexus" to confer the state's jurisdiction to apply its tax laws to that corporation in any manner. Therefore, Article 12.02 does not apply to the business of this corporation and this corporation is not "doing business in this State" under the provisions of Article 12.02.

Your third question involves the application of Section (2) of Article 12.02; the question is:

"In this connection, please also advise whether this office is legally correct in concluding 'that a corporation whose franchise tax liability is substantially increased solely by reason of the provisions of Article 12.02 (1)(b)(1) is entitled to employ the special methods set out in Section (2) of Article 12.02 on the basis that the allocation and apportionment provisions of the Section (1) of the Article do not fairly represent the extent of its business activities in Texas."

The statutory language of Article 12.02, supra, indicates the legislative intent to tax only that portion of the capital structure that is represented by (or may be attributed to) the corporation's business activities in Texas. Section (1) attempts to measure the extent of a corporation's Texas business by the gross receipts from such business and defines certain activities and transactions that are to be considered as "business done in Texas" in the application of the apportionment formula provided therein.

Section (2) provides for the use of alternative methods of measuring the extent of a corporation's business activities in Texas, if the formula provided in Section (1) does not fairly represent the extent of such activities in the State. Section (2) does not set out any particular type of formula other than the possible use of "separate accounting", which is a method of isolating the activities of a corporation within the State and determining the "receipts" attributable to such activities. Skelly Oil Co. v. Comm'r. of Taxation, 269 Minn. 351, 131 N.W.2d 632 (1934); Texas Co. v. Cooper, 236 La. 380, 107 So.2d 676 (1959); Magnolia Petroleum Co. v. Oklahoma Tax Comm'r., 190 Okla. 172, 121 P.2d 1008 (1942). Other than "separate accounting" the statute does not indicate any special method of determing the extent of business activities in Texas, other than general statements that the methods used should be fairly representative and equitable.

The third question thus asks if a corporation is entitled to special methods of apportionment provided in Article 12.02(2), when its tax liability is substantially increased by Article 12.02(1)(b)(1), which includes destination sales (i.e. sales of goods shipped to purchasers in Texas) in the statutory definition of gross receipts from business done in Texas. The question specifically asks if the Comptroller is legally correct in concluding that such a corporation is entitled to use the special methods of apportionment in Article 12.02(2), which provides in part:

> "If the allocation and apportionment provisions of Section (1) of this Article do not fairly represent the extent of the taxpayer's business activity in Texas, the taxpayer may petition for and the Comptroller may permit . . . if reasonable: . . ."

Whether the Section (1) formula does not fairly represent the proportionate amount of the taxpayer's business activity in Texas is the question that must be decided before the special methods allowed in Section (2) may be used.

The franchise tax liability of a corporation will be increased by Section (1)(b)(1) where it makes interestate sales into Texas and delivers the property to purchasers in this State. Does this fact alone require a legal conclusion of unfairness of the Section (1) formula? We think not. The legislative intent shown by the language of Section (1)(b)(1), was to include such sales in the "gross receipts from business done in Texas". This intent cannot be harmonized with a conclusion that Section (1)(b)(1) creates an unfair representation of the extent of "business done in Texas", thus allowing the taxpayer to use an alternative method under Section (2).

The provision of Article 12.02(1)(b)(1) does not create an unfair method of apportionment merely because it results in a substantially higher franchise tax. A taxpayer is not entitled to use the provisions of Section (2) whenever its tax liability is increased by Section (1)(b)(1) or any other provisions of the Section (1) apportionment formula, without a showing of the unfairness or inequity as authorized in this Section (2). In our opinion these are sufficient standards. "Unfair or inequitable" has been upheld by the Supreme Court of the United States. See Davis' Administrative Law Treatise, Sec. 2.03. See also Jordan v. State Board of Insurance,

160 Tex. 506, 334 S.W.2d 278 (1960); Texas Pipe Line Co. v. Anderson, 100 S.W.2d 754, 762-3 (Tex.Civ.App. 1937, error ref., cert. den.  302 U.S. 724), upholding a standard of tax apportionment of "fair, just, and equitable"; accord: Alaska Steamship Co. v. Mullaney, 108 F.2d 805 (9th Cir. 1950); 1 Am.Jur. 927-928, Administrative Law, Sec. 119.[3]

Article 12.02(1)(b)(1) can only serve to increase the amount of business allocable to Texas and will therefore increase the franchise tax due in every case where it applies. If the formula in Article 12.02(1) is deemed unfair whenever this tax increase is substantial, then its inclusion makes the formula unfair whenever it applies to a corporation's activities.

For the above reasons, our opinion is that a mere substantial increase in franchise taxes resulting from Section (1)(b)(1) does not per se result in an unfair or inequitable representation of the extent of business done in Texas.  A taxpayer whose tax liability is substantially increased because of the inclusion of this provision in the allocation formula, is not, therefore, entitled to use the special methods provided in Section (2) in the absence of showing that the application of Section (1)(b)(1) to his business operations presents an unfair or inequitable allocation and apportionment of its capital to Texas.

---

3. We are informed that similar provisions as to standards analogous to these in Article 12.02(2) were contained in the second preliminary report of the Committee on Tax Situs and Allocation of the National Tax Association in 1950, and in the Uniform Division of Income for State Tax Purposes Act drafted by the National Conference of Commissioners on Uniform State Laws in 1959.  Further, we are reliably informed that more than 29 States of the Union now have similar provisions as to their standards in their state laws.  An adequate standard is held to be an allocation which fairly apportions to the state net income reasonably attributable to business done within the state.  El Dorado Oil Works v. McColgan, 34 Cal.2d 731, 215 P.2d 4 (1950), appeal dism. 71 S.Ct. 52, 340 U.S. 801, reh.den. 71 S.Ct. 193, 340 U.S. 885.

The standards of Section 2 of Article 12.02 are very similar to those of Article IV, subdivision 18 of Article 7359a, Vernon's Civil Statutes, which is the Multistate Tax Compact adopted by the Texas Legislature.

## S U M M A R Y

It is the opinion of this office that a corporation whose only contacts or nexus with the State of Texas are the presence and solicitation activity of its employees within this State, is within the State's tax jurisdiction and is subject to the terms and conditions of the State tax statutes otherwise validly imposed on said corporation. A corporation without any contacts or nexus with this State other than the use of the United States mail and common carriers within this State, is not subject to the tax jurisdiction of this State or to its tax laws.

The mere fact that a corporation incurs a substantial tax liability as a direct result of the inclusion of "destination" sales as business done in Texas within the terms of Article 12.02 of the Franchise Tax Act, does not entitle it to use other methods of apportionments that may be allowed by Section (2) of that Article.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Wardlow Lane
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

J. H. Broadhurst
Z. T. Fortescue
Rex White
Robert Giddings

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant