Bellacosa, J.
(dissenting). Because we agree with the Appellate Division’s grant of the respective petitions to annul the determinations of the Tax Appeals Tribunal, we respectfully dissent and vote to affirm in each case.
The Court is unanimous that the governing constitutional standard is "substantial nexus” of the taxpayer’s business activities to the taxing State and not "substantial physical presence.” Judge Ciparick and I conclude, however, that the minuscule, infrequent activities in New York by the two Vermont vendors do not satisfy the "substantial nexus” threshold requirement imposed by the Commerce Clause of the United States Constitution (art I, § 8, cl [3]), and the governing interpretations promulgated by the United States Supreme Court.
It seems to us that the majority’s articulation miscasts the evolution of United States Supreme Court Commerce Clause precedents and injects confusion when a "substantial nexus” *182 bright line has been the guiding hallmark and jurisprudential goal. Functionally and commercially, telling out-of-State businesses that they dare not dip their toes within New York’s borders without incurring New York taxes is not the teaching of the United States Supreme Court cases. Rather, deterring interstate traffic in such respects by taxation is precisely what is forbidden under the mantle of the Commerce Clause. Thus, absent evidence of a "small sales force, plant, or office” (Quill Corp. v North Dakota, 504 US 298, 315), or "continuous local solicitation” (Scripto v Carson, 362 US 207, 211 [emphasis added]), within New York State, imposition of the taxes at issue should be unconstitutional.
The question devolves to whether Orvis Company, Inc. and Vermont Information Processing, Inc., businesses not authorized and not doing business in New York, nevertheless by their minimal acts or course of business venturings arising out of sporadic commercial transactions in New York, entangled themselves in New York State’s wide taxing web.
A State may not tax the economic activity of a foreign business engaged in interstate commerce unless "the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State” (Complete Auto Tr. v Brady, 430 US 274, 279 [1977] [emphasis added]). The Supreme Court has repeatedly applied this principle in subsequent cases, most recently in Oklahoma Tax Commn. v Jefferson Lines (514 US —, —, 115 S Ct 1331, 1338 [Apr. 3, 1995]). The present cases turn solely on the first prong, i.e., whether New York has a substantial nexus with the interstate activities of these two Vermont businesses to sustain a New York State sales and use tax.
A precise appreciation and reflection of the precedential building blocks is essential in this highly technical field. In National Bellas Hess v Department of Revenue (386 US 753 [1967]), the State of Illinois sought to impose a use tax on National, a mail-order business with its principal place of business in Missouri. National did not own any real property, maintain an office, sales house or warehouse in Illinois, and it did not have any agents, salespeople or other type of continuous representation in Illinois. National’s only link to Illinois was via the United States mail or a common carrier.
Under Illinois statute, National was required to collect and *183 pay to the State a tax imposed upon Illinois consumers who purchase the company’s goods for use in the State. National argued that the tax created an unconstitutional burden upon interstate commerce. The Supreme Court ruled in favor of the putative taxpayer. The Court declared that "if Illinois can impose such burdens, so can every other State, and so, indeed, can every municipality, every school district, and every other political subdivision throughout the Nation” (id., at 759). In 1992, the Supreme Court ruled in Quill Corp. v North Dakota (504 US 298, supra) that Bellas Hess was still valid, operative and consistent with its decision in Complete Auto Tr. v Brady (430 US 274, supra).
Quill settled two important facets of the rules. First, the nexus requirements of the Due Process and Commerce Clauses are not the same. Thus, a foreign corporation may engage in "minimum contacts” to satisfy the Due Process Clause, but still lack "substantial nexus” to support a State’s taxing reach under the Commerce Clause. Second, the imposition of the duty to collect sales and use taxes on a foreign corporation is subject to a physical presence or functional equivalent requirement. The Court stated:
"Like other bright-line tests, the Bellas Hess rule appears artificial at its edges: Whether or not a State may compel a vendor to collect a sales or use tax may turn on the presence in the taxing State of a small sales force, plant, or office. * * * This artificiality, however, is more than offset by the benefits of a clear rule. Such a rule firmly establishes the boundaries of legitimate state authority to impose a duty to collect sales and use taxes and reduces litigation concerning those taxes. * * * [A] bright line rule in the area of sales and use taxes also encourages settled expectations and, in doing so, fosters investment by businesses and individuals” (Quill, supra, at 315-316 [citations omitted]).
New York’s approach, now approved by this Court in the instant two cases, contradicts that rationale, certainty and the bright-line approach. It allows businesses to be tax-nicked at the "edges.” Notably, Quill excludes from interstate taxation commercial activities which are not based on the physical presence of a "small sales force, plant, or office” in the taxing State (id., at 315). Accordingly, sporadic sojourns into a State will not supply an adequate nexus to overcome the Commerce *184 Clause protection (compare, Miller Bros. Co. v Maryland, 347 US 340, 346-347 [a Due Process Clause case]).
We disagree with the majority’s suggestion that Miller Bros. Co. v Maryland (supra) is essentially irrelevant (majority opn, at 175, n 2). Miller required the demonstration of "some definite link, some minimum connection, between a state and the person * * * or transaction it seeks to tax” (347 US, at 344-345), and the Supreme Court ruled not to allow the imposition of the use tax on the Delaware merchandiser (Miller Bros. Co. v Maryland, 347 US 340, 340-345, supra). The case rests on a different analysis of economic exploitation of consumer markets. Thus, it retains its vitality, relevance and analogous usefulness to the distinct analysis and disposition of the instant case.
The following cases are also important to scan the full landscape. In National Geographic v California Equalization Bd. (430 US 551 [1977]), the Supreme Court held that the State of California’s imposition of a use tax liability on the Society’s mail-order operation did not violate the Commerce Clause, since the Society had two offices in the State of California and "activities there adequately established] a relationship or 'nexus’ between the [magazine] and the State” sufficient to support the tax (id., at 556). Similarly, in Standard Steel Co. v Washington Revenue Dept. (419 US 560), the State of Washington’s imposition of a tax levied on Standard’s unapportioned gross receipts of sales made to Boeing Company, in Seattle, was not repugnant to the Commerce Clause, since one of Standard’s employees maintained an office in the State of Washington (see also, Tyler Pipe Indus. v Department of Revenue, 483 US 232; Holmes Co. v McNamara, 486 US 24, 32). Furthermore, in Felt & Tarrant Co. v Gallagher (306 US 62, 64), the State of California sought to impose a use tax against an Illinois corporation. The Court upheld the imposition of the tax where the Illinois corporation had hired two general agents to solicit sales orders in California and contracted to pay the rent of a California office maintained for each agent (see also, Moorman Mfg. Co. v Bair, 437 US 267; General Motors v Washington, 377 US 436; accord, Nelson v Sears, Roebuck & Co., 312 US 359; Nelson v Montgomery Ward, 312 US 373 [no Commerce Clause violation where sellers maintained local retail stores in taxing State]).
Importantly, in the absence of an in-State plant or office, substantial nexus has been found to exist only when the *185 foreign vendor maintains "continuous local solicitation” within the taxing State (Scripto v Carson, 362 US 207, 211, supra [emphasis added]; Miller Bros. Co. v Maryland, 347 US 340, 346, supra; see, National Geographic v California Equalization Bd., 430 US 551, 557, supra; National Bellas Hess v Department of Revenue, 386 US 753, 757, supra). In Scripto, a Georgia corporation sold certain mechanical writing instruments to Florida residents. Scripto did not own or lease any office or plant in Florida. However, the corporation had written contracts with 10 sales "brokers,” who were residents of Florida. The detailed contracts described the brokers as representatives of "Scripto for the purpose of attracting, soliciting and obtaining Florida customers.” Although the salespeople were independent contractors, they provided Scripto with "continuous local solicitations in Florida,” which satisfied the substantial nexus requirement (Scripto v Carson, 362 US 207, 211, supra).
The instant cases fall neither under Scripto nor National Geographic. The majority, we respectfully suggest, focuses too narrowly on the legal relationship between Scripto and its agents, rather than on the regularity and durational aspects of the agents’ economic activities in the taxing State. The latter features are dispositive and key under the legal tests in Quill and Scripto. The Supreme Court expressly stated that the fact that "the 'salespeople’ were] not regular employees of [Scripto] devoting full time to its service” had no constitutional significance, because "[t]he test is simply the nature and extent of the activities * * * in [the taxing State]” (Scripto v Carson, supra, at 211-212 [emphasis added]). Highly significant in these cases involving our application of exclusively governing Supreme Court jurisprudence is the fact that the Supreme Court itself has repeatedly stated that Scripto v Carson (supra) "represents the furthest constitutional reach to date of a State’s power to deputize an out-of-state retailer as its collection agent for a use tax” (National Bellas Hess v Department of Revenue, 386 US 753, 757, supra; see, Quill Corp. v North Dakota, 504 US 298, 306, supra). We believe that the instant cases go "further”.
Relevantly, in General Trading Co. v State Tax Commn. (322 US 335), a Minnesota corporation, which maintained no office or place of business in Iowa, solicited sales in Iowa by salespeople from headquarters in Minnesota where the goods were shipped by common carrier into Iowa. The United States Supreme Court made no mention in the decision of the num *186 ber of salespeople or the regularity of their excursions to solicit sales in Iowa. However, in referencing the facts of General Trading in a Due Process Clause case, Miller Bros. Co. v Maryland (347 US 340, 346, supra), the Supreme Court noted "[t]hat was the case of an out-of-state merchant entering the taxing state through traveling sales agents to conduct continuous local solicitation * * * the only nonlocal phase of the total sale being acceptance of the order” (emphasis added). Indeed, it was the absence of continuous local solicitation which led the Supreme Court in Miller Bros, (supra) to hold that the State of Maryland could not impose the duty to collect a use tax on a Delaware merchandising corporation, although Miller made occasional deliveries into Maryland.
These precedents, taken together, in our respectfully tendered view, provide no constitutional hook to sustain the imposition of sales and use taxes assessed against these two Vermont vendors. The Tax Appeals Tribunal acknowledged that neither vendor maintained, leased or owned any office, distribution house or any other place of business in New York; nor do they own any tangible property, real or personal in New York; nor do they have a telephone listing in New York; nor do they have any agents or representatives stationed in New York. They, thus, have not provided New York with the key to the tax coffers box — a substantial nexus to New York by their activities here.
Orvis Company, Inc. submitted two affidavits to rebut the imposition of the use tax. The first affidavit, dated November 16, 1990, was signed by Leigh H. Perkins, president of the Orvis Company, Inc. Perkins stated that employees of Orvis’ wholesale division visited New York retailers on a "sporadic, irregular basis.” The purpose of the visits was to communicate with the retailers about problems in shipments, questions regarding display of the product, and to inspect the establishments of retailers selling Orvis products. Lastly, Perkins stated that "[t]he purpose of these visits was not to solicit sales to retailers nor to obtain purchase orders from the retailers.”
The second affidavit, dated November 19, 1990, was signed by Thomas S. Vaccaro, a vice-president and the treasurer of the Orvis Company, Inc. Vaccaro’s affidavit repeated many of the same facts set forth in Perkins’ affidavit, but also attached a worksheet depicting the number of trips in New York State taken by Orvis Company, Inc. wholesale division employees *187 during the assessment period, September 1, 1977 through August 31, 1980. During the 36-month assessment period, Orvis’ employees made 12 trips to New York. The State relies on a letter signed by Vaccaro, dated March 27, 1981. In that letter, Vaccaro stated that "[s]ame salesmen who reside in Vermont travel into New York to call on non-Orvis owned stores. The salesmen in no way bind the Orvis Company; all orders are approved in Vermont.”
The letter and affidavits honestly acknowledge Orvis’ de minimis, fleeting dashes into New York State. This is not the stuff of a cognizable, constitutional threshold called "substantial nexus,” absent any of the other physical presence features of "continuous local solicitation” (Scripto v Carson, 362 US 207, 211, supra [emphasis added]; Miller Bros. Co. v Maryland, 347 US 340, 346, supra). Orvis’ New York drop-ins look very much like Miller’s occasional deliveries into Maryland (see, id.), and amounted to nothing more than a r'slight [ ] presence” in New York (National Geographic v California Equalization Bd., 430 US 551, 556, supra [emphasis added]).
Likewise, Vermont Information Processing, Inc. had no employees in New York, did not employ salespeople to travel into New York to solicit sales, nor did it advertise in New York or engage in direct mail solicitation. Most of VIP’s customers heard about VIP’s products through word-of-mouth, and it was VIP’s policy to invite interested parties to Vermont for demonstrations. If a customer decided to purchase VIP’s services, VIP would send a contract by United Parcel Service. The final product, whether it was an entire computer hardware system or simply computer software, was shipped to the customer via common carrier. VIP’s customers were usually trained to use the programs developed for them at VIP’s headquarters in Vermont. VIP’s personnel were available to customers by telephone to resolve problems. In addition, if software modifications were required, VIP installers were able directly to access a customer’s computer from VIP’s own computer system in Vermont through the use of a modem. In fact, during the entire assessment period, December 1, 1983 through November 30, 1986, VIP personnel made at most 41 visits to New York to service existing clients, never to solicit new customers. In our view, VIP’s relatively occasional sojourns into New York State cannot represent anything more than a slight physical presence, and surely do not qualify as "continuous local solicitation.” VIP, like Orvis, lacked continu *188 pus presence in New York, which is the sine qua non of the "substantial nexus” test.
These businesses evidently tried to conform their business practices to legitimately avoid incurring multistate taxation in accordance with the teaching of Quill (Quill Corp. v North Dakota, 504 US 298, 309-317, supra). Despite their best efforts, they are now snagged by the ever-widening net that unsettles expectations, discourages investment and legitimate interstate commercial intercourse and tears at the mantle of Commerce Clause protection.
In sum, the "nature and extent of the activities” (Scripto v Carson, 362 US 207, 211, supra) of these two Vermont vendors are less "substantial” than all previous cases where "substantial nexus” has been found to exist. If the minimal forays in these cases are sufficient for New York to tax these businesses, so, too, can every other State, municipality and political subdivision throughout the Nation for minimally qualifying conduct (National Bellas Hess v Department of Revenue, 386 US 753, 759, supra). Finally and intuitively, these cases present an interesting contradiction in the facts of their minimal conduct and the law of substantial nexus.
Chief Judge Kaye and Judges Simons, Titone and Smith concur with Judge Levine; Judge Bellacosa dissents and votes to affirm in a separate opinion in which Judge Ciparick concurs.
In Matter of Orvis Co. v Tax Appeals Tribunal: Judgment modified, with costs to appellant-respondent Commissioner, and matter remitted to the Appellate Division, Third Department, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
In Matter of Vermont Information Processing v Tax Appeals Tribunal: Judgment reversed, with costs, and petition dismissed.