IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 6, 2002 Session

## AMERICA ONLINE, INC. v. RUTH E. JOHNSON, COMMISSIONER OF REVENUE

### Appeal from the Chancery Court for Davidson County
No. 97-3786-III    Ellen Hobbs Lyle, Chancellor

---

### No. M2001-00927-COA-R3-CV - Filed July 30, 2002

---

The Chancery Court of Davidson County granted summary judgment to America Online, Inc. on the Commissioner of Revenue's claim that AOL's activities in this state gave it a sufficient nexus to subject it to state taxes. Because we find that this question is fact-specific and that the record does not show that AOL is entitled to a judgment as a matter of law, we reverse.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and D. MICHAEL SWINEY, JJ., joined.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Margaret M. Huff, Assistant Attorney General, for the appellant, State of Tennessee.

Joseph W. Gibbs and Patricia Head Moskal, Nashville, Tennessee and Curtis P. Lu, Washington, D.C., for the appellee, America Online, Inc.

### OPINION

### I.

America Online, Inc. (AOL) is a Delaware Corporation providing various Internet and online services, including electronic mail and Internet access. Its principal office is in Virginia where its main computer facilities are located. For the purpose of AOL's motion for summary judgment, the Commissioner does not insist that AOL owns or leases any real property in Tennessee. There is a dispute about the extent to which AOL owns or leases personal property in this state.

AOL does not have regular employees in this state; it sells its services through the mail or by magazine inserts. The promotional materials include printed brochures and a floppy disk containing the software necessary to access AOL's data center in Virginia. By using the disk the

customer can sign up on line and become an AOL member by agreeing to the terms and conditions of the offer. One of the conditions is to return or destroy the software upon termination of the membership.

With the software in place and the agreement consummated, a member can access AOL's services by dialing a telephone number supplied by a third-party network service provider (NSP), which routes the call to its general data network and on to AOL's data center in Virginia. During the relevant period, AOL used two types of public data networks provided by NSPs. The x.25 data networks were provided by public companies, such as Sprint and Tymnet, that provided the same services to other customers. In 1994 AOL began using AOLnet, which had its own network of NSPs. Each NSP in AOLnet, one of which was ANSCO+RE Systems, Inc. (ANS), a subsidiary of AOL, operated a public data network used by other customers in addition to AOL members. But, in this system the service was provided to AOL members through dedicated modems and other component parts leased by AOL and located in Tennessee. The ownership of AOLnet itself is disputed.

Some of AOL's members in Tennessee were designated as "remote staff." They were unpaid persons, working from their homes, and trained by AOL to moderate real-time conferences. They were subject to call at any time to help enforce AOL's rules, such as the rules against vulgarity or harassment. They did not, however, solicit business in Tennessee.

**II.**

Article I § 8 of the United States Constitution gives Congress the power to regulate commerce among the several states. From a very early time in our history as a nation, this grant of power to the Congress has been interpreted to mean that the states may not interfere with interstate commerce. *See Quill Corp. v. North Dakota*, 112 S.Ct. 1904 (1992). At one time, a state tax on interstate commerce was considered per se interference. *See Leloup v. Port of Mobile*, 127 U.S. 640 (1888). But, in the fullness of time, the Supreme Court recognized that not all state taxes on interstate commerce interfered with it and that states should be compensated for the valuable services they rendered in making the flow of commerce possible. Therefore, in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, rehg. denied, 430 U.S. 976 (1977), the Court announced a four-part test to determine if a tax on an out-of-state seller could be sustained. The Court said the tax would be sustained so long as it "[1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the State." *Id.* at 279.

This case is all about the nexus prong of the test. The chancellor held that the Supreme Court's decisions in this area, as interpreted by this court in *J.C. Penney Nat'l Bank v. Johnson*, 19 S.W.3d 831 (Tenn. Ct. App. 1999), appeal denied, (Tenn. May 8, 2000), cert. denied, *Johnson v. J.C. Penney Nat'l Bank*, 531 U.S. 927 (2000), had held fast to a bright-line test requiring an out-of-state company to have a "physical presence" in this state in order to have a substantial nexus with it. We think, however, that that reading of *J.C. Penney* would simply substitute "physical presence" for

"nexus"[1] as the first prong of the *Complete Auto Transit* test. As we read the cases, neither court has made that suggestion. What we actually said in *J.C. Penney* was,

> It is not our purpose to decide whether "physical presence" is required under the Commerce Clause. However, the Commissioner has pointed to no case in which the Supreme Court of the United States has upheld a state tax where the out-of-state taxpayer had absolutely no physical presence in the taxing state.

19 S.W.3d at 842.

Perhaps it would have been more accurate to say that the Supreme Court had rejected state taxes on interstate commerce where no activities had been carried on in the taxing state on the taxpayer's behalf. The clearest case involved a mail order house that had neither outlets nor sales representatives in the taxing state and the ownership of tangible property in the taxing state was either insignificant or non-existent. *Bellas Hess v. Department of Revenue*, 386 U.S. 753 (1967). The Court said that a vendor whose only contacts with the state are by mail or common carrier lacks a substantial nexus with the state. In *Quill Corp. v. North Dakota*, 504 U.S. 298 (1992), the Court reached the same result in a case where the vendor did business through the Internet, and the Court discounted the fact that the company retained ownership of a "few" floppy diskettes that had been sent into the state containing promotional materials.

In other cases where the out-of-state taxpayer did not actually have offices or employees in the taxing state, the court, nevertheless, found a substantial nexus based on in-state activities carried on by affiliates or independent contractors on the taxpayer's behalf. *See Tyler Pipe Industries v. Washington*, 483 U.S. 232 (1987); *Scripto v. Carson*, 362 U.S. 207 (1960). In each case the Court made no distinction between regular employees and independent contractors for the purpose of finding a nexus under the *Complete Auto Transit* test.

In a case with an interesting twist, the Court in *National Geographic Society v. California Bd. of Equalization*, 430 U.S. 551 (1977), found a substantial nexus with the taxing state even though the in-state activity did not relate to the activity the state sought to tax. In that case the company had two offices in the state that solicited advertising to be placed in the *National Geographic* magazine. But the advertising employees performed no functions related to a mail order business conducted for the sale of maps, atlases, globes, and books which the state sought to tax. It seems to us that the mail order business stood in the same relationship to the state as the businesses in *Quill* and *Bellas Hess* and that a good argument could be made that the tax was not applied to an activity that had a substantial nexus with the state.[2] Nevertheless, the Court found that the solicitation of more than $1 million in ad revenue each year established more than a slight presence

---

[1]This substitution would not be much of a change. One term is about as nebulous as the other.

[2]Justice White actually dissented in *Quill* because he thought that *National Geographic* had overruled *Bellas Hess*, and had decoupled the transactional nexus from the first part of the *Complete Auto Transit* test.

in the state. We would agree that that level of business by in-state employees is a substantial nexus, but that is not all of the nexus test. The <u>activity</u> taxed must have a substantial nexus with the state.

**III.**

Rule 56 of the Tennessee Rules of Civil Procedure requires the movant to show that there are no material facts in dispute and that the movant is entitled to a judgment as a matter of law. *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993). We do not think undisputed facts show that the taxes sought by the Commissioner would violate the Commerce Clause of the United States Constitution.

We do not think that it is conclusive that AOL does not have offices or employees in the state or that it does not own or rent real property here. We know that a substantial nexus may be established by activities carried on within the state by affiliates and independent contractors. *See Tyler Pipe Industries v. Washington*, 483 U.S. 232 (1987); *Scripto v. Carson*, 362 U.S. 207 (1960). In fact the only situation where we know that a substantial nexus does not exist is where the only contact with the state is by the Internet, mail and common carriers. *See Quill Corp. v. North Dakota*, 504 U.S. 298 (1992); *Bellas Hess v. Department of Revenue*, 386 U.S. 753 (1967). Where, on the other hand, activities are "being conducted in the taxing state that substantially contribute to the taxpayer's ability to maintain operations in the taxing state," a substantial nexus does exist. *J.C. Penney*, 19 S.W.2d at 841 (referencing *Tyler Pipe*, 483 U.S. 232 and *Scripto*, 362 U.S. 207).

In this case there are a substantial number of businesses operating in this state helping make the AOL service available to Tennessee customers. The NSPs provide services, some through their own equipment, and some by using equipment leased by AOL and located here. One of the NSPs is an AOL subsidiary. While the record is not developed to a point of clarity, we do not think the record shows that the activities conducted here on AOL's behalf could be termed inconsequential or of only slight significance. We think that AOL's connection with this state amounts to more than the Internet, mail and common carrier connection in *Quill* and *Bellas Hess*. Finally, although the Court considered Quill's retention of ownership of a "few" floppy diskettes that it had sent into the state for promotional purposes to be insignificant, we think at some point the number mailed into the state does become a factor to be added to the balance. Considering the record as a whole, we think the question of whether AOL's nexus with this state satisfies the *Complete Auto Transit* test is still open.

The Commissioner has raised a question about how the trial court limited discovery. With our holding here, we think the question for the purpose of this appeal is moot. But the information concerning AOL's relationship to the NSPs – especially its subsidiary, ANS – is highly relevant to the question of what activities, if any, are being conducted on AOL's behalf. The same observation applies to the remote staff operating for AOL in Tennessee even though they did not solicit business in Tennessee. Any information about their activities on AOL's behalf is relevant.

## IV.

AOL argued in its brief and at oral argument that the taxes assessed by the Commissioner were not fairly apportioned to Tennessee. On this issue, however, and the other issues pretermitted by the chancellor, we do not think the record has been sufficiently developed to allow us to rule on them.

The judgment of the court below is reversed and the cause is remanded to the Chancery Court of Davidson County for further proceedings. Tax the costs on appeal to AOL.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.