**HOUSE OF LLOYD, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1996.

Decided Oct. 28, 1996.

---

Thomas L. Wenger, for Petitioner.

Matthew W. Tomalis, Deputy Attorney General, for Respondent.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

COLINS, President Judge.

House of Lloyd (House of Lloyd or taxpayer) petitions for review of the January 9, 1991 determination of the Board of Finance and Revenue (Board) sustaining the Department of Revenue's (Revenue) assessment of sales and use tax deficiencies against House of Lloyd for the period from January 1, 1986 to August 31, 1988.

House of Lloyd is a Missouri corporation with its principal place of business in Grandview, Missouri. House of Lloyd sells its products in Pennsylvania through a network of home party hostesses. The House of Lloyd sales distribution system consists of a hierarchy of district managers, supervisors, demonstrators, and hostesses. House of Lloyd contracts with district managers, who are recruited from the top selling supervisors.

District managers sign a District Manager Agreement with House of Lloyd in which they agree to recruit and train supervisors and demonstrators. Each district manager receives commissions on all sales attributable to her supervisors, and each district manager generally also works as supervisor and demonstrator, for which she receives regular commissions (i.e., no district manager level commissions).

Supervisors sign a Supervisor Agreement (form supplied by House of Lloyd) with a district manager in which they agree to recruit and train demonstrators in exchange for commissions based on demonstrator sales. Supervisors generally also act as demonstrators, for which they receive regular commissions.

Demonstrators sign a Demonstrator Agreement (form supplied by House of Lloyd) with a supervisor in which they agree to demonstrate and sell House of Lloyd products[1] and recruit hostesses. Each demonstrator receives commissions on her party and non-party sales. The party hostess makes her home available for a sales demonstration to which she invites interested members of her family and community. For each home party, the hostess receives a free gift (a dollar amount to spend on House of Lloyd products).

Each district manager, supervisor, and demonstrator receives a sample kit from the House of Lloyd to be used in promoting and selling House of Lloyd products. A sample kit consists of a selection of products, a bundle of about fifty catalogs, and order forms and has a retail value of $300. A district manager is entitled to keep the kit when the required demonstrator sales are met. A supervisor is entitled to keep a kit at no charge when her demonstrator sales reach $1,500. A demonstrator is entitled to keep the kit when her personal sales reach $1,500; however, House of Lloyd retains the first $75 in commissions as a deposit. Sample kits must be returned in saleable condition upon request, if not "earned," or they may be purchased for $150 each.

District managers, supervisors, and demonstrators are eligible for House of Lloyd's incentive program. Demonstrators, supervisors, and district managers earn incentive points based on meeting sales goals and participation in sales and recruitment programs; points can be redeemed for non-House of Lloyd merchandise.

Pursuant to Section 202(b) of the Tax Reform Code of 1971 (Code),[2] the Commonwealth assessed use tax deficiencies on the taxpayer's use of sample kits, incentive prizes, and hostess free goods. Section 202(b) imposes a tax on the use of tangible personal property purchased at retail. 72 P.S. § 7202(b). Section 201(o) of the Code defines "use," in pertinent part, as the exercise of any right or power incidental to ownership, custody, or possession, including transportation, storage, or consumption. 72

---

1. Demonstrators sell products at home parties and at "book" parties. For example, book or non-party sales result when a demonstrator makes a product catalog generally available to co-workers in a workplace lunchroom.

2. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7202(b).

P.S. § 7201(*o*). Pursuant to 61 Pa.Code § 31.7(a)(1), a person who purchases taxable tangible personal property outside the Commonwealth incurs a use tax liability if the property is subsequently used or consumed in the Commonwealth and no Commonwealth tax is paid to the vendor. The Commonwealth takes the position that the taxpayer is liable for the use tax on items used and consumed in the Commonwealth for promotional purposes and as sales incentives.

House of Lloyd disputes Revenue's assessment of use tax on its use of sample kits, incentive prizes, and hostess free goods. House of Lloyd first asserts that the use tax was improperly imposed because it does not use the taxed items in the Commonwealth; rather it contends, the items are property shipped to independent contractors for their own use, free from the taxpayer's control. Second, House of Lloyd asserts that imposition of the use tax violates the Commerce Clause [3] of the U.S. Constitution because the taxpayer has no physical presence in the Commonwealth and its only contact with the Commonwealth is through independent contractors and common carrier. Third, House of Lloyd asserts that Revenue's sales tax deficiency assessment is based on inaccurate sales volume figures.

**Waiver of Issues**

■ As a preliminary matter, the Commonwealth raises the objection that the taxpayer has waived its Commerce Clause and sales tax issues because these issues were not raised in the administrative proceedings below or in the taxpayer's petition for review. With respect to our review of determinations of the Board of Finance and Revenue, a question will be heard if it was raised at any stage of the administrative proceedings and thereafter preserved, and the questions raised in the petition for review will be determined on the record made before this Court. Pa.R.A.P. (Rule) 1571(h). Appeal from the Board's decision is de novo. The record before us includes nothing from the administrative proceedings, and the parties stipulated that the record in this matter will consist of the January 26, 1996 trial deposition and exhibits as well as the stipulation of

procedural facts. Because the Commonwealth agreed to the contents of the record, it may not now base its objection on matters not of record.

■ Rule 1571(c) provides that the petition for review must contain only a general statement of objections to the order or determination sought to be reviewed. The general statement of objections will be deemed to include every subsidiary question fairly comprised therein. *Lycoming County Nursing Home Association, Inc. v. Department of Labor and Industry, Prevailing Wage Appeal Board*, 156 Pa.Cmwlth. 280, 627 A.2d 238 (1993).

■ We agree with the Commonwealth that the taxpayer has waived the sales tax issue. Paragraph 8 of the taxpayer's petition, which contains its general statement of objections refers only to the use tax assessments. The sales tax assessment is not fairly encompassed by the general statement of objections, and the trial deposition and exhibits are directed solely to the use tax issues.

■ The taxpayer's Commerce Clause issue, although not specifically stated in the petition, may be found to be fairly encompassed in the taxpayer's general statement of objections wherein the taxpayer asserts that it makes no use of the taxed items within the Commonwealth and asserts that it has no employment relationship with the independent purchasers who resell its products in the Commonwealth (i.e., it asserts that it has no physical presence in the Commonwealth).

**Commerce Clause Restrictions**

■ Commerce Clause restrictions on state taxation are currently embodied in the four-part test set forth in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). A tax will be sustained against a Commerce Clause challenge so long as the tax meets all four requirements: The "tax [1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services

---

**3.** U.S. Const. art. I, § 8, cl. 3.

provided by the State." *Id.* at 279, 97 S.Ct. at 1079.

■ In the area of sales and use taxes, a substantial nexus will not be found where the taxpayer or vendor has no physical presence in the taxing state. *National Bellas Hess, Inc. v. Department of Revenue of Illinois,* 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967). *"Bellas Hess* ... stands for the proposition that a vendor whose only contacts with the taxing State are by mail or common carrier lacks the 'substantial nexus' required by the Commerce Clause." *Quill Corporation v. North Dakota,* 504 U.S. 298, 311, 112 S.Ct. 1904, 1912, 119 L.Ed.2d 91 (1992). Outside of that safe harbor, "whether or not a State may compel a vendor to collect a sales or use tax may turn on the presence in the taxing State of a small sales force, plant, or office." *Id.* at 315, 112 S.Ct. at 1914.

We find persuasive the Commonwealth's analogy relating the present case and *Scripto, Inc. v. Carson,* 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660 (1960). The *Scripto* decision upheld Florida's assessment of its use tax against a Georgia corporation with no facilities, real property, or regular employees/agents in Florida. The court found the required nexus, or physical presence, in Scripto's having contracted with ten Florida brokers/wholesalers to solicit orders for its products and its having equipped these brokers with catalogs, sample products, and advertising material. Although the contract specified that these brokers were independent contractors and the court agreed they were not regular Scripto employees, the court concluded that "such a fine distinction is without constitutional significance. The formal shift in the contractual tagging of the salesman as 'independent' neither results in changing his local function of solicitation nor bears upon its effectiveness in securing a substantial flow of goods into Florida." *Id.* at 211, 80 S.Ct. at 621–22.

Although the Supreme Court in *Quill* may have cited *Scripto* as an extreme example of the physical presence held adequate to constitute the required nexus under the Com-

merce Clause, the case is good law, and House of Lloyd's presence in the Commonwealth well exceeds any minimum represented by *Scripto.* House of Lloyd may have no facilities, real property, or regular employees in the Commonwealth, but it directs and controls a very large sales force[4] in the Commonwealth dedicated exclusively to promoting and selling House of Lloyd products. Like Scripto, House of Lloyd equips its sales force with sample products, catalogs, and order forms; trains its salespeople how to recruit, how to promote its products, and how to close sales; and maintains constant communication with its salespeople at all levels.

■ The other three tests under *Complete Auto Transit* have also been met. The Commonwealth's use tax is fairly apportioned in that it includes the customary provisions against duplication, including a credit for sales tax paid to another state. The use tax does not discriminate against interstate commerce: it applies only to in-state sales and use of property, and the tax burden falls equally on in-state and out-of-state residents. Finally, the tax is fairly related to services provided by the Commonwealth. House of Lloyd benefits directly and indirectly from the Commonwealth's protection, opportunities, and services. Notably, it avails itself of access to the Commonwealth's economic market and enjoys the benefits and protections of its courts, laws, and law enforcement. The measure of the use tax (percentage of purchase price) is reasonably related to the taxpayer's presence and activities in the Commonwealth (sales and use of property taking place wholly inside the Commonwealth). *See Oklahoma Tax Commission v. Jefferson Lines, Inc.,* —— U.S. ——, ——, 115 S.Ct. 1331, 1346, 131 L.Ed.2d 261 (1995).

### Application of the Use Tax

■ The Commonwealth assessed use tax deficiencies against the taxpayer's use of sample kits, incentive prizes, and hostess free goods within the Commonwealth. House of Lloyd contends that sample kits and incen-

---

4. For example, in 1987 the taxpayer's sales force in the Commonwealth numbered 55,205 hostesses, 3,403 demonstrators, 507 supervisors, and 4 district managers. (Petitioner's Exhibit 6.)

tive prizes are "made available as compensation" to district managers, supervisors, and demonstrators for achieving stated sales goals; that sample kits are intended to aid in the recipients' merchandising activities; but that House of Lloyd does not control their use. Hostess free gifts, it contends, reward the hostess for her efforts and reimburse her for expenses incurred in connection with the home party. The Commonwealth asserts that the taxpayer's distribution of the taxed items to its Pennsylvania sales force and hostesses constitutes a taxable use under the Code; that is, that House of Lloyd uses the taxed items in the Commonwealth to promote sales of its products and to otherwise expand and enhance its Pennsylvania business.

House of Lloyd ships sample kits to its district managers for distribution to supervisors and demonstrators; in the event that a supervisor or demonstrator does not live near her district manager, House of Lloyd will ship the sample kit directly. Each kit consists of about twenty-five products, bundles of catalogs and order forms, and adhesive tags. Salespeople are instructed to carry the sample kit to every home party; not to take any samples from the kit until the last party; to prepare labels for each sample product showing its name, item number, and price; to minimize wear and tear on the boxes; and to save unused packing in order to enhance the value of the kit for when the salesperson returns or sells it at the end of the season. (Exhibit 4 to Joint Exhibit A.) Under the terms of their contracts, each district manager, supervisor, and demonstrator is entitled to keep a sample kit when $1,500 of demonstrator commissionable sales have been paid and shipped. District managers must account for all sample kits at the end of a selling season and must either return or pay for any kits not "earned" by the salesperson.

Accordingly, we find that the kits are the property of House of Lloyd and that House of Lloyd uses the kits in the Commonwealth, through distribution to its sales force, to promote and sell its products. House of Lloyd transfers only custody of the kits and continues to exercise control until the end of a selling season (kits that are "earned") and afterward (kits that must be returned).

■ Incentive prizes are goods purchased by House of Lloyd and made available to its salespeople. House of Lloyd uses incentive prizes to encourage and reward participation in its sales and recruiting programs. In addition to commissions, salespeople earn incentive points for meeting specified sales goals and recruiting goals and for participating in House of Lloyd promotions. Weekly statements show each salesperson how many points she has earned, and House of Lloyd provides a catalog showing the year's incentive "prizes" and the number of incentive points needed to obtain each prize.

Hostess free goods are House of Lloyd products made available to the hostess of each home party; the value of the free goods increases incrementally with the amount of sales, number of guests attending the home party, and number of new hostesses recruited at the home party. House of Lloyd uses hostess free goods to encourage and reward hostess participation in holding home parties, closing home party sales, increasing home party attendance, and recruiting other hostesses from the home party attendees. Demonstrators coach hostesses to select their free merchandise (from the product samples demonstrated at the party) in front of the guests and be sure the guests see what she has earned. The hostess orders her free merchandise on the same form used to submit guest orders.

Unlike the sample kits, incentive prizes and hostess free goods are property purchased by House of Lloyd outside the Commonwealth and subsequently used or consumed in the Commonwealth upon transfer to its salespeople and hostesses. Pursuant to 61 Pa.Code § 31.7(a)(1), House of Lloyd incurs a use tax liability on taxable tangible personal property purchased outside the Commonwealth and subsequently used or consumed in the Commonwealth when no Commonwealth tax is paid to the vendor.

In conclusion, the Commerce Clause is no impediment to the Commonwealth's imposition of its use tax on the House of Lloyd because the tax is applied to an activity with

a substantial nexus with the Commonwealth, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to services provided by the Commonwealth. The use tax assessment is sustained as to the sample kits, which House of Lloyd uses in the Commonwealth to promote its products and expansion of its business. The use tax is sustained as to the incentive prizes and hostess free goods as the property is purchased by House of Lloyd outside the Commonwealth and consumed in the Commonwealth.

### ORDER

AND NOW, this 28th day of October, 1996, judgment in the above-captioned matter is entered in favor of the Commonwealth in the amount of $181,325.86 plus interest. Judgment becomes final unless exceptions are filed within thirty (30) days of the entry of this order pursuant to Pa.R.A.P. 1571(i).

SMITH, J., concurs in the result only.