**HOUSE OF LLOYD, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 9, 1997.

Decided May 22, 1997.

---

Thomas L. Wenger, Harrisburg, for petitioner.

Bart J. DeLuca, Jr., Senior Deputy Attorney General, Harrisburg, for respondent.

Before COLINS, President Judge, and McGINLEY, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and LEADBETTER, JJ.

COLINS, President Judge.

House of Lloyd, Inc. filed exceptions to the October 28, 1996 opinion and order of the Commonwealth Court of Pennsylvania. *House of Lloyd v. Commonwealth*, 684 A.2d 213 (Pa.Cmwlth.1996). In that opinion, we affirmed the Department of Revenue's (Revenue) assessment of use tax deficiencies pursuant to Section 202(b) of the Tax Reform Code of 1971 (Code).[1]

The facts underlying this controversy, as set forth in our opinion, follow:

> House of Lloyd is a Missouri corporation with its principal place of business in Grandview, Missouri. House of Lloyd sells its products in Pennsylvania through a network of home party hostesses. The House of Lloyd sales distribution system consists of a hierarchy of district managers, supervisors, demonstrators, and hostesses. House of Lloyd contracts with district managers, who are recruited from the top selling supervisors.
>
> District managers sign a District Manager Agreement with House of Lloyd in which they agree to recruit and train supervisors and demonstrators. Each district manager receives commissions on all sales attributable to her supervisors, and each district manager generally also works as supervisor and demonstrator, for which she receives regular commissions (i.e., no district manager level commissions).
>
> Supervisors sign a Supervisor Agreement (form supplied by House of Lloyd) with a district manager in which they agree to recruit and train demonstrators in exchange for commissions based on demonstrator sales. Supervisors generally also act as demonstrators, for which they receive regular commissions.
>
> Demonstrators sign a Demonstrator Agreement (form supplied by House of Lloyd) with a supervisor in which they agree to demonstrate and sell House of Lloyd products and recruit hostesses. Each demonstrator receives commissions on her party and nonparty sales. The party hostess makes her home available for a sales demonstration to which she invites interested members of her family and community. For each home party, the hostess receives a free gift (a dollar amount to spend on House of Lloyd products).
>
> Each district manager, supervisor, and demonstrator receives a sample kit from the House of Lloyd to be used in promoting and selling House of Lloyd products. A sample kit consists of a selection of products, a bundle of about fifty catalogs, and order forms and has a retail value of $300. A district manager is entitled to keep the kit when the required demonstrator sales are met. A supervisor is entitled to keep a kit at no charge when her demonstrator sales reach $1,500. A demonstrator is entitled to keep the kit when her personal sales reach $1,500; however, House of Lloyd retains the first $75 in commissions as a deposit. Sample kits must be returned in saleable condition upon request, if not "earned," or they may be purchased for $150 each.
>
> District managers, supervisors, and demonstrators are eligible for House of Lloyd's incentive program. Demonstra-

[1]. Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7202(b), which, in pertinent part, imposes a six percent tax on the retail purchase price of tangible personal property used in the Commonwealth.

tors, supervisors, and district managers earn incentive points based on meeting sales goals and participation in sales and recruitment programs; points can be redeemed for non-House of Lloyd merchandise.

*Id.* at 215 (footnote omitted).

In our October 28, 1996 opinion, we affirmed the Commonwealth's assessment of use tax against the taxpayer's use of sample kits, incentive prizes, and hostess free goods after concluding: 1) the tax does not violate Commerce Clause restrictions as embodied in the four-part test set forth in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977); and 2) the taxpayer uses the taxed items within the Commonwealth as "use" is defined in Section 201(*o*) of the Code, 72 P.S. § 7201(*o*). The Taxpayer filed timely exceptions, which are now before us.

The Taxpayer asserts that we erred in "relying upon *Scripto v. Carson*, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660 (1960), the factual circumstances of which diverge widely from the facts of this case." (Petitioner's Exceptions at p. 4.) According to the Taxpayer, "[t]he *Scripto* issue was whether an out-of-state retailer was liable to collect sales tax upon goods sold through in-state independent contractor salesmen." (Petitioner's Brief, dated February 14, 1997, at p. 6.)

First, we note that *Scripto* had absolutely nothing to do with a sales tax. *Scripto* involved Florida's application of its use tax in connection with a Georgia corporation's sales to Florida residents. The present case involves the Commonwealth's application of its use tax in connection with the Taxpayer's sales to Pennsylvania residents. More important, the issue in both cases was whether a sufficient nexus existed between the out-of-state corporation and the taxing state to subject the corporation to the taxing state's exaction. The issue is "whether [Pennsylvania], in the light of [petitioner's] operations there, may collect the State's use tax from it on the basis of property ... shipped from its home office to ... [Pennsylvania] for use there." *Id.* at 210, 80 S.Ct. at 621.

■ Second, we cited *Scripto* as an extreme example of the physical presence held adequate to constitute the required nexus under the Commerce Clause, and for the opinion's language refuting the Taxpayer's contention that its district managers, supervisors, and demonstrators are independent contractors rather than employees. In this case, as in *Scripto*, the Taxpayer's "contractual tagging of the sales[person] as 'independent' neither results in changing [her] local function of solicitation nor bears upon its effectiveness in securing a substantial flow of goods into [Pennsylvania]." *Id.* at 211, 80 S.Ct. at 621–22. The nexus in the instant case is far more substantial than in *Scripto:* the Taxpayer has over 50,000 (compared with 10 in *Scripto* ) such "independent contractors" dedicated to promoting and selling House of Lloyd products, to recruiting and training salespeople, and to securing a substantial flow of goods into the Commonwealth.

The presence in the Commonwealth of the Taxpayer's "independent contractors" acting as a very large, organized, and Taxpayer-directed sales force and constantly recruiting more salespeople, constitutes a physical presence satisfying the bright-line test for substantial nexus approved in *Quill Corporation v. North Dakota*, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) (citing *National Bellas Hess, Inc. v. Department of Revenue of Illinois*, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967)). House of Lloyd's activities, its use of sample kits, incentive prizes, and hostess free goods in the Commonwealth to promote and sell its products, take it outside the safe harbor created for vendors whose only connection with the taxing state is by mail or common carrier. *Id.*

As to the second and third parts of the *Complete Auto Transit* test, we believe those tests have been met for the reasons stated in our October 28 1996 opinion. We reject the Taxpayer's argument that our analysis was based on a "deemed" taxable use, which we address below.

■ We are well aware of the Supreme Court's careful distinction between commerce clause and due process requirements in *Quill,* and we drafted our decision in light of

that distinction. The Taxpayer asserts the Commonwealth's application of its use tax to the items in question unduly burdens interstate commerce, but it neglects to explain the nature of that burden. We see no such burden. In *Quill*, the Supreme Court focused on the collection obligation that the North Dakota tax imposed on vendors having no relationship to the taxing state other than a few isolated transactions, and the extreme burden on interstate commerce that would result if similar obligations were imposed by over 6,000 other taxing jurisdictions. 504 U.S. at 313, n. 6, 112 S.Ct. at 1914, n. 6. In the instant case, the Commonwealth imposes nothing more than an obligation to pay, an obligation no more burdensome than any vendor's obligation to pay sales tax in jurisdictions where it does business.

■ Finally, the Taxpayer excepts to our conclusion that it uses the taxed items within the Commonwealth. The Taxpayer argues that it does not exercise ownership, control, custody, possession, or consumption over the taxed items once it places the items into "interstate commerce." We think the record shows otherwise.

The Commonwealth, in Section 202(*o*) of the Code, 72 P.S. § 7202(*o*), determines what is and is not a taxable use of property: the exercise of any right or power incidental to ownership, custody, or possession, including transportation, storage, or consumption. As we noted in our October 1996 opinion, the sample kits remain the property of the Taxpayer after they are shipped into the Commonwealth, and it continues to exercise control over the kits until the end of the selling season. The Taxpayer uses incentive prizes and hostess free goods to promote and reward sales, recruiting, training, and strict adherence to its program. These items are directed to the Taxpayer's business purposes and are used by the Taxpayer for its direct benefit; and the taxed activity (i.e., the Taxpayer's use of sample kits, incentive prizes, and hostess free goods for its business purposes) has a substantial nexus with the Commonwealth.

Our conclusion on this issue finds ample support in *D.H. Holmes Company, Ltd. v. McNamara*, 486 U.S. 24, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988), wherein the Supreme Court upheld Louisiana's assessment of its use tax against a taxpayer's distribution of its merchandise catalogs to Louisiana residents. Like the House of Lloyd, D.H. Holmes placed these catalogs into interstate commerce and had no control over the recipient's subsequent use of the catalogs, but it did have a significant economic presence in the taxing state. Even though the Taxpayer is not a Commonwealth resident, its "use" of the taxed items in the instant case is analogous to that of the taxpayer in *D.H. Holmes*.

Accordingly, petitioner's exceptions are overruled, and the Court's decision and order of October 28, 1996 are affirmed. Judgment shall be entered in favor of the Commonwealth as set forth in that order.

### ORDER

AND NOW, this 22nd day of May, 1997, petitioner's exceptions are overruled, and the Court's order of October 28, 1996 in the above-captioned matter is affirmed. The Chief Clerk is directed to enter judgment in favor of the Commonwealth of Pennsylvania in the following amount:

Use Tax—$181,325.86 plus appropriate interest.