# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00643-CV

**Alpine Industries, Inc., Appellant**

**v.**

**Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas; and Greg Abbott, Attorney General of the State of Texas, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
NO. 98-12998, HONORABLE DARLENE BYRNE, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

In this tax protest suit, Alpine Industries, Inc. (AAlpine@) appeals from the district court=s grant of summary judgment in favor of Carole Keeton Strayhorn, Comptroller of Public Accounts, and Greg Abbott, Attorney General of the State of Texas (collectively, AComptroller@). The Comptroller determined that Alpine, which manufacturers air-purification equipment sold in Texas and elsewhere by Alpine=s network of independent dealers, is a direct sales organization. As a result, Alpine, and not its dealers, is responsible for collecting and paying Texas sales taxes. *See* Tex. Tax Code Ann. ' 151.024 (West 2002);

Former 34 Tex. Admin. Code ' 3.286.[1] Alpine argues that the district court=s grant of summary judgment in favor of the Comptroller is in error because (1) the Comptroller failed to prove as a matter of law that Alpine is a direct sales organization; (2) the Comptroller failed to comply with the tax code by failing to make an individualized determination that Alpine is a direct sales organization and that treatment of Alpine as a retailer for tax purposes is necessary for the efficient administration of chapter 151 of the tax code;[2] (3) the tax violates the commerce clause of the United States Constitution; (4) the tax violates the due process clause of the United States Constitution; (5) the tax violates the equal protection clauses of the United States Constitution and the Texas Constitution; and (6) the Comptroller failed to prove as a matter of law that it was entitled to summary judgment on its counterclaim. We will affirm the district court=s summary judgment.

## BACKGROUND AND PROCEDURE

Alpine is a Tennessee-based company that manufactures air-purification equipment. Its equipment is sold in Texas and throughout the United States by a network of independent salespersons. In order to become a salesperson for Alpine, one is required to pay Alpine a fee on a yearly basis. In

---

[1] 21 Tex. Reg. 11800 (1996) (amended 2002) (current version at 34 Tex. Admin. Code Ann. 3.286 (2004)) (Former 34 Tex. Admin. Code ' 3.286).

[2] As an individual issue, Alpine argues the Comptroller failed to prove that its tax is necessary for the efficient administration of the tax code. Because this issue is duplicative of the argument contained within its second issue, we will address Alpine=s argument in conjunction with that issue.

exchange for the fee, Alpine sends to each salesperson promotional materials including a videotape and a copy of a manual entitled AYour Alpine Success and Evaluation Manual.@

Alpine describes itself as a multilevel marketing company, with different levels of salespersons. Each salesperson is encouraged to recruit others to join Alpine=s network. A salesperson=s recruits are known as Alegs@ and form a Adownline.@ Alpine provides incentives such as automobiles and world travel if a salesperson=s recruits are successful and pays bonuses to its salespersons based upon the dollar volume of products ordered. Alpine=s accounting records indicate that up to 20,000 persons with Texas addresses registered with Alpine to sell Alpine=s products between 1994 and 1998.[3]

---

[3] Alpine correctly notes that not all persons listed in its accounting records sold Alpine products during *every* year from 1994 to 1998. However, our review of Alpine=s records reveals hundreds, if not thousands, of salespersons with Texas addresses who purchased Alpine products during one or more of each of the years in question.

The Texas Tax Code allows the Comptroller to treat a dealer, distributor, supervisor, or employer as a retailer for tax purposes if "it is necessary for the efficient administration of this chapter [regarding limited sales, excise, and use taxes]."[4] Tex. Tax Code Ann. ' 151.024 (West 2002). At the time of this dispute, the Texas Administrative Code provided that a retailer is engaged in business in Texas if the retailer is "utilizing independent salespersons in direct sales of taxable items." Former 34 Tex. Admin. Code ' 3.286(a)(1)(D). The same rule provided: "A direct sales organization engaged in business as defined in paragraph (1)(D) of this subsection is a seller and is responsible for the collection and remittance of the sales tax collected by the independent salespersons selling the organization=s product." *Id.* ' 3.286(a)(3). Finally, the rule provided: "Independent salespersons of direct sales organizations will not be required to hold sales tax permits. It is the responsibility of the direct sales organization to hold Texas permits and to collect Texas tax." *Id.* ' 3.286(b)(3).

---

[4] The tax code provides:

' 151.024. Persons Who May be Regarded as Retailers

If the comptroller determines that it is necessary for the efficient administration of this chapter to regard a salesman, representative, peddler, or canvasser as the agent of a dealer, distributor, supervisor, or employer under whom he operates or from whom he obtains the tangible personal property that he sells, whether or not the sale is made in his own behalf or for the dealer, distributor, supervisor, or employer, the comptroller may so regard the salesman, representative, peddler, or canvasser, and may regard the dealer, distributor, supervisor, or employer as a retailer or seller for the purpose of this chapter.

Tex. Tax Code Ann. ' 151.024 (West 2002).

On June 20, 1996, the Comptroller wrote Alpine and stated: AIt has come to our attention that your company is a multi-level marketing company/direct sales company. . . . [Y]our company is required to collect and remit Texas sales and use taxes for its independent distributors.@ On July 3, 1996, Alpine responded to the Comptroller=s letter and stated that Awe are not a typical multi-level organization@ and that Awe feel that Rule 3.286(a)(3) does not apply to our business practice.@ The Comptroller and Alpine then engaged in a series of correspondence regarding whether Alpine was responsible for the collection and payment of Texas sales and use taxes. After Alpine refused to comply with a Comptroller request to complete a business tax questionnaire, the Comptroller estimated the amount of tax Alpine owed and issued several notices of tax due.

Alpine paid $33,004.14 under protest and filed suit on November 20, 1998. *See* Tex. Tax Code Ann. '' 112.051-.052 (West 2001). The Comptroller answered and filed a counterclaim, seeking the actual amount of taxes Alpine owed. *See id.* ' 112.052(c). After discovery, the Comptroller determined that Alpine made sales of $32,014,745.21 through its independent salespersons in Texas from 1994 to 1998. Based on these sales figures, the Comptroller sought judgment against Alpine for $2,000,921.57 in back taxes. The Comptroller filed a motion for summary judgment on Alpine=s protest suit and on its own counterclaim. The district court granted the Comptroller summary judgment. This appeal followed.

## STANDARD OF REVIEW

When a taxpayer files suit to recover taxes paid under protest, it is the taxpayer=s burden to go forward and show a right to the taxes paid under protest. *See A. W. Cullum & Co. v. Calvert*, 450

S.W.2d 419, 422 (Tex. Civ. App.C Austin 1970, writ ref=d); *Calvert v. Union Producing Co.*, 258 S.W.2d 176, 181 (Tex. Civ. App.C Austin 1953, no writ). When the constitutional validity of a tax is contested, we begin with a presumption that the statute is constitutional. *See Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 934 (Tex. 1996); *see also Upjohn Co. v. Rylander*, 38 S.W.3d 600, 610 (Tex. App.C Austin 2000, pet. denied). Taxpayers must rebut this presumption of constitutionality by introduction of Aclear and cogent@ evidence. *See Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 164 (1983); *Norton Co. v. Department of Revenue*, 340 U.S. 534, 537 (1951); *Upjohn*, 38 S.W.3d at 610.

We give serious consideration to an agency=s construction of a statute, as long as the construction is reasonable and does not contradict the plain language of the statute. *Continental Cas. Co. v. Downs*, 81 S.W.3d 803, 807 (Tex. 2002) (citing *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993)). We recognize that the legislature intends an agency created to centralize expertise in a certain regulatory areaA be given a large degree of latitude in the methods it uses to accomplish its regulatory function.@ *Moore*, 845 S.W.2d at 823.

We construe the text of an administrative rule under the same principles as if it were a statute. *Phillips Petroleum Co. v. Texas Comm=n on Envtl. Quality*, 121 S.W.3d 502, 507 (Tex. App.C Austin 2003, no pet.) (citing *Texas Gen. Indem. Co. v. Texas Workers=Comp. Comm=n*, 36 S.W.3d 635, 641 (Tex. App.C Austin 2000, no pet.)). We bear in mind that an administrative agency has the power to interpret its own rules, and its interpretation is entitled to great weight and deference. *Id.* The agency=s construction of its rule is controlling unless it is plainly erroneous or inconsistent. *Id.*

6

# DISCUSSION

**Direct Sales Organization**

Alpine argues the Comptroller failed to prove as a matter of law that Alpine is a direct sales organization. *See* Former 34 Tex. Admin. Code ' 3.286; *see also* Tex. Tax Code Ann. ' 151.024 (allowing treatment of certain dealers, distributors, supervisors, or employers as retailers if doing so is necessary for administrative efficiency). Although the Texas Legislature has not specifically defined the term Adirect sales organization,@ the Comptroller=s rule provides that a direct seller can be a retailer Autilizing independent salespersons in direct sales of taxable items.@ Former 34 Tex. Admin. Code ' 3.286(a)(1)(D), (3). When Alpine asked for a more specific definition of Adirect sales organization,@ the Comptroller responded that a direct sales organization Auses individual canvassers, solicitors, peddlers, door-to-door salespersons, etc., to sell its products.@

The Comptroller=s summary-judgment evidence from Alpine=s own manual establishes that Alpine marketed its products through a network of independent salespersons and encouraged them to sell Alpine products through cold calls, teaser mailing, and person-to-person approaches, among others.[5]

---

[5] Alpine asserts for the first time on appeal that there is no evidence to support the Comptroller=s contention that Alpine is a direct sales organization because Athe only evidence proffered by the Comptroller was a manual that was not issued until *after* the tax years in question.@ Although the manual submitted as an exhibit to the Comptroller=s motion for summary judgment was printed in April 1998, it clearly indicates that it was first printed in November 1995 and that the information contained therein was copyrighted in 1995. Moreover, Alpine does not argue that its manual does not accurately reflect Alpine=s business practice for any of the tax years in question. We therefore reject Alpine=s contention that the manual constitutes no evidence.

Alpine argues that its dealers are not Asalesmen, representatives, peddlers, or canvassers,@ as envisioned in the Comptroller=s definition of direct sales organization and in section 151.024 of the tax code.  Rather, Alpine asserts its dealers are Aindependent contractors.@  Notwithstanding Alpine=s characterization, its dealers function in the same way as salesmen, representatives, peddlers, or canvassers function.  Alpine encourages its independent salespersons to hold meetings in their homes to sell Alpine products and recruit new salespersons; compensation for Alpine=s dealers is based not on fixed rates or the number of hours worked, but on the amount of Alpine=s products they sell and the price at which the sales are made; and Alpine=s dealers utilize a variety of sales techniques, including cold calls, teaser mailing, and person-to-person sales, all of which are suggested by Alpine.

Alpine further argues that the Comptroller failed to prove that Alpine is a direct sales organization because, according to the affidavit of Alpine=s president, Alpine is not a Atypical@ direct sales organization and Asells both to individuals who do not have fixed-store operations and to those who do.@  However, Alpine has failed to introduce actual evidence of a single independent salesperson who sold Alpine=s products through a fixed-store operation.[6]  Because Alpine=s president=s statements could not have been Areadily controverted@ and are conclusory, they constitute no evidence.  *See* Tex. R. Civ. P. 166a(c) (affidavits by interested witness constitute evidence if, among other factors, they could have been readily controverted); *Burrow v. Arce*, 997 S.W.2d 229, 236 (Tex. 1999) (conclusory affidavit is incompetent summary-judgment evidence).  We therefore hold that the Comptroller established that Alpine is a direct sales organization.  We overrule Alpine=s first issue.

---

[6] In Alpine=s early correspondence to the Comptroller, Alpine stated that its products were being

8

**Compliance with Texas Tax Code**

Alpine asserts the Comptroller violated section 151.024 of the tax code in two ways. First, Alpine argues that the Comptroller failed to make Aan individualized determination that unique tax treatments for differing persons is warranted,@ a step Alpine alleges is required by section 151.024. Second, Alpine contends that section 151.024 of the tax code does not authorize the Comptroller to create a class of persons labeled Adirect sales organizations@ and require them to collect sales and use taxes.

**1.** *Determination of Administrative Efficiency*

---

sold at retail through AHome Environment Center@ franchises. Although the Comptroller requested additional information about Alpine=s contention and informed Alpine that the Comptroller=s determination could change upon receipt of additional facts, Alpine failed to support its bare assertion that its products were being sold in AHome Environment Center@ franchises.

The legislature authorizes the Comptroller Ato regard a salesman, representative, peddler, or canvasser as the agent of a dealer, distributor, supervisor, or employer . . . [and to] regard the dealer, distributor, supervisor, or employer as a retailer or seller for the purpose of [chapter 151 of the tax code]@ if the Comptroller Adetermines that it is necessary for the efficient administration of [the chapter].@ Tex. Tax. Code Ann. ' 151.024. Alpine argues that the Comptroller failed to make an individualized determination that requiring Alpine to remit sales taxes is necessary for administrative efficiency. As support for its contention, Alpine states the Comptroller never conducted investigations, hearings, or studies in making such a determination.[7]

---

[7] The tax code entitles a taxpayer to obtain a hearing to redetermine a tax. Tex Tax. Code Ann. ' 151.510 (West 2002). Alpine never requested such a hearing.

Although the legislature requires that the Comptroller determine that treatment of a dealer, distributor, supervisor, or employer as a retailer is necessary for administrative efficiency, the legislature does not require the Comptroller to take particular steps in making this determination. The Comptroller produced ample evidence to show that it did, in fact, determine that Alpine is a direct sales organization and that treatment of Alpine as a retailer under section 151.024 is necessary for administrative efficiency. The Comptroller produced letters from its Tax Policy Division to Alpine that were part of the Comptroller=s investigation, various internal e-mails that were part of the Comptroller=s investigation, and Alpine=s accounting records that show up to 20,000 Alpine salespersons residing in Texas during the tax years in question. The Comptroller argued in both its correspondence to Alpine and its argument to the district court that treatment of Alpine as a retailer and the corresponding requirement that Alpine collect the tax**C**as opposed to taxation of up to 20,000 individual salespersons**C**is necessary for administrative efficiency. *See* Letter Op. Tex. Comptroller No. 9907537L (1999) (AThe purpose of the policy is to ease the administrative burden to our state. By regarding the direct sales organization as the retailer and not permitting the independent distributors, the administrative burden of permitting thousands of home-based distributors who sell products for direct sales companies is eliminated.@). We hold that the Comptroller=s summary-judgment evidence establishes that the treatment of Alpine as a retailer for tax purposes is necessary for administrative efficiency.[8]

## 2. *Statutory Authority*

---

[8] We also overrule appellant=s separate issue that the Comptroller failed to prove that its tax is necessary for administrative efficiency.

Alpine argues that section 151.024 of the tax code does not authorize the Comptroller to create a class of persons labeled direct sales organizations and require them to collect sales and use taxes. The core of Alpine=s argument is that if the Comptroller is not required to make a determination that treatment of direct sales organizations as retailers is necessary for administrative efficiency, then the Comptroller=s rule constitutes an unlawful delegation of legislative authority. *See Moody v. City of Univ. Park*, 278 S.W.2d 912, 922 (Tex. Civ. App.CDallas 1955, writ ref=d n.r.e.) (AIt is fundamental that a legislative body may not delegate unlimited legislative powers and functions to an administrative agency.@).

The Comptroller responds that because it did, in fact, determine that treatment of Alpine as a retailer is necessary for administrative efficiency, it complied with section 151.024. The Comptroller further argues that its rule Ais a valid exercise of the authority granted to the Comptroller under [section 151.024 of the tax code] to treat distributors of products sold through salesmen as the retailer of those products.@ *See* Former 34 Tex. Admin. Code ' 3.286.

We agree with the Comptroller. Although Alpine argues that the Comptroller has created a blanket category of Adirect sales organizations@ and treats all direct sales organizations as retailers for tax purposes, the summary-judgment evidence regarding an individualized determination as to Alpine proves otherwise. Because the Comptroller made an individualized determination, we hold that the Comptroller complied with the tax code. We overrule Alpine=s second issue.

**Constitutional Claims**

**A. Commerce Clause**

By specifically delegating to Congress the power Ato regulate Commerce . . . among the several States,@ the commerce clause implicitly prohibits the states from actions that interfere with interstate commerce. U.S. Const. art. I, ' 8, cl. 3; *see Quill Corp. v. North Dakota*, 504 U.S. 298, 309 (1992). The prohibition does not, however, render impermissible all direct state taxation of interstate commerce. *Rylander v. Bandag Licensing Corp.*, 18 S.W.3d 296, 299 (Tex. App.CAustin 2000, pet. denied). A state tax on a foreign corporation will be sustained if the Atax [1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State.@ *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977).

Alpine=s protest letter stated that the Comptroller=s tax violated the commerce clause of the United States Constitution because AAlpine does not have a sufficient nexus with the State of Texas.@ This was also the only ground asserted by Alpine in support of its commerce-clause contention in its summary-judgment response. For the first time on appeal, however, Alpine argues that the Comptroller failed to carry its summary-judgment burden because it failed to introduce evidence on the last three *Complete Auto*

commerce-clause factors.[9] Alpine=s argument ignores that the issues to be determined in a protest suit Aare limited to those arising from the reasons expressed in the written protest as originally filed.@ Tex. Tax Code Ann. ' 112.053(b) (West 2001).[10] Because the nexus requirement of the *Complete Auto* factors was the only argument ever made by Alpine in support of its commerce-clause contention, we reject Alpine=s argument that the Comptroller was required to rebut as a matter of law arguments not asserted by Alpine in its protest letter.

As to the nexus requirement, Alpine contends that the Comptroller failed to prove as a matter of law that its tax Ais applied to an activity with a substantial nexus with the taxing State.@ *See Complete Auto*, 430 U.S. at 279. The nexus requirement of *Complete Auto* is satisfied if the taxpayer has a physical presence in the taxing state. *See Quill*, 504 U.S. at 317-18 (upholding bright-line physical presence test for determining whether out-of-state company may be taxed); *see also National Bellas Hess,*

---

[9] Although Alpine has introduced no evidence that the Comptroller=s tax violates any of the final three *Complete Auto* factors, Alpine argues that A[t]his one procedural omission requires reversal of the summary judgment.@

[10] This requirement serves a twofold purpose: (1) allowing the Comptroller the first opportunity to determine the merits and validity of the protest; and (2) preventing the protestor from taking advantage by Achanging horses@ at trial. *Lawrence Indus., Inc. v. Sharp*, 890 S.W.2d 886, 892 (Tex. App.CAustin 1994, writ denied).

14

*Inc. v. Department of Revenue*, 386 U.S. 753, 758-89 (1967) (providing safe harbor for mail-order or catalogue companies with no physical presence in taxing state).

The presence of a sales force in the taxing state is sufficient to satisfy the physical presence test. *See, e.g.*, *Tyler Pipe Indus., Inc. v. Washington State Dep=t of Revenue*, 483 U.S. 232, 250 (1987); *Scripto, Inc. v. Carson*, 362 U.S. 207, 211 (1960). Scripto, a Georgia corporation, had no office or regular employees in Florida, but it employed wholesalers or jobbers to solicit sales of its products in Florida. *Scripto*, 362 U.S. at 208-11. The United States Supreme Court held that a sufficient nexus existed and that Florida may require these solicitors to collect a use tax from Florida customers. *Id.* at 211. Although Scripto argued correctly that the Asalesmen@ were not employees of Scripto, the United States Supreme Court determined that Asuch a fine distinction is without constitutional significance.@ *Id.*; *accord National Geographic Soc=y v. California Equalization Bd.*, 430 U.S. 551, 556-558 (1977).

In *Tyler Pipe*, Tyler sold a large volume of cast iron, pressure and plastic pipe and fittings, and drainage products in Washington, but manufactured the products in other states. 483 U.S. at 249. Tyler maintained no office, owned no property, and had no employees residing in the State of Washington; its solicitation of business in Washington was directed by executives who maintained their offices out of state and by an independent contractor located in Seattle. *Id.* Although Tyler argued that its representative in Seattle was an independent contractor, as opposed to an agent, the United States Supreme Court affirmed the Washington Supreme Court=s analysis Athat this showing of a sufficient nexus could not be defeated by the argument that the taxpayer=s representative was properly characterized as an independent contractor

15

instead of as an agent.@ *Id.* The United States Supreme Court again stated that Asuch a fine distinction is without constitutional significance.@ *Id.* (citing *Scripto*, 362 U.S. at 211).

Alpine=s first argument in support of its contention that the Comptroller did not establish a sufficient nexus between Texas and Alpine=s sales activities is that Alpine had no inventory, real estate, employees, offices, bank accounts, or other assets in Texas. However, the Comptroller introduced evidence that Alpine maintained a network of up to 20,000 independent salespersons in Texas. Alpine=s Texas sales network made sales of $32,014,745.21 from 1994 to 1998. Alpine suggested a variety of sales techniques in its ASuccess and Evaluation@ manual for its sales force to use when selling Alpine=s products. Alpine=s extensive network of salespersonsCeven though they are independent contractorsCestablishes a sufficient nexus between Texas and Alpine=s sales activities. *See Tyler Pipe*, 483 U.S. at 249; *Complete Auto*, 430 U.S. at 279; *Scripto*, 362 U.S. at 211.

Next, Alpine argues that its business structure is distinguishable from those at issue in *Scripto* and *Tyler Pipe*, where the taxpayers= sales forces helped the taxpayers maintain markets in the taxing states. Alpine argues that AAlpine=s independent dealers do not maintain markets, but rather are themselves the market, which is exemplified by the large number of independent dealers and the very few purchases each ultimately makes from Alpine.@

We disagree. In a letter to the Comptroller, Alpine=s president stated that A[m]ost of our dealers are selling the product retail@ and that A[w]e actually have very little personal consumption.@ The fact that some salespersons were making only a few purchases from Alpine does not indicate that they were the market for Alpine; rather, it indicates that these salespersons were not willing or able to find purchasers

16

for Alpine=s products.  The uncontroverted evidence shows a sufficient nexus between Texas and Alpine=s sales activities.  We therefore reject Alpine=s contention that the Comptroller=s tax violates the commerce clause.[11]  We overrule Alpine=s third issue.

## B.  Due Process

Alpine argues that the Comptroller=s tax violates the due process clause of the United States Constitution.  See U.S. Const. amend. XIV, ' 1.  A[D]ue process requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.@ *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344-45 (1954).  A[I]f a foreign corporation purposefully avails itself of the benefits of an economic market in the forum State, it may subject itself to the State=s *in personam* jurisdiction even if it has no physical presence in the State.@ *Quill*, 504 U.S. at 307.  Because Alpine=s sales

---

[11]  Alpine cites *Miller Brothers Co. v. Maryland*, 347 U.S. 340 (1954), as support for its contention that there is not a sufficient nexus between Texas and its sales activities.  In *Miller Brothers*, the United States Supreme Court held that Maryland could not tax a Delaware furniture store because the only connection between the state and the store arose *after* goods were bought in Delaware and transported to Maryland by the customer, common carrier, or by the store=s own delivery trucks.  *Id.* at 341.  *Miller Brothers*, however, is easily distinguishable because the furniture store maintained no sales force in Maryland whatsoever.  *Id.*  Here, Alpine maintains an extensive sales network in Texas for the purpose of marketing and selling its products.

force in Texas constitutes a physical presence, the minimum-connection requirement is satisfied. *See id.* at 307-08.

Alpine also asserts that the Comptroller=s tax violates due process because the Comptroller failed to show a rational basis for the tax. *See Federal Communications Comm=n v. Beach Communications, Inc.*, 508 U.S. 307, 314-15 (1993). The Comptroller argues that administrative convenience provides a rational basis for its classification of Alpine as a direct sales organization and for its imposition of tax against Alpine. This rationale is supported by letter opinions and hearing decisions indicating that the purpose of the Comptroller=s tax is to ease the administrative burden on the state. Although Alpine disagrees with the Comptroller=s conclusion, it has failed to negate the rational basis asserted by the Comptroller. *See id.* at 315 (party challenging tax classification bears burden to negate every conceivable basis that might support it). We overrule Alpine=s fourth issue.

## C. Equal Protection

Alpine argues that the Comptroller=s tax violates the equal protection clauses of the United States Constitution and the Texas Constitution because the Comptroller=s classification of Alpine as a direct sales organization, along with its different treatment of direct sales organizations, denies Alpine equal protection of the law. States generally have broad powers to impose and collect taxes, but they must not make classifications among taxpayers that are arbitrary, unreasonable, or capricious. *See Hurt v. Cooper*, 110 S.W.2d 896, 901 (Tex. 1937); *Upjohn*, 38 S.W.3d at 609. That all taxes be equal and uniform requires only that all persons falling within the same class be taxed alike. *Upjohn*, 38 S.W.3d at 609.

18

Under the equal-protection test applied here, Alpine must show that the Comptroller=s classification resulted in discrimination between *similarly situated* taxpayers. *See Westcott*, 104 S.W.3d at 150; *Sharp v. Caterpillar, Inc.*, 932 S.W.2d 230, 241 (Tex. App.C Austin 1996, writ denied) (taxpayer must show that liability classification actually resulted in discrimination between similarly situated taxpayers). Because Alpine was unable to make any such showing, we overrule its fifth issue.

**The Comptroller=s Counterclaim**

In its final issue, Alpine argues that the Comptroller failed to prove that it was entitled to recover on its counterclaim. The Comptroller introduced evidence that Alpine=s independent salespersons in Texas made $32,014,745.21 in sales during the audit period. The Comptroller then applied the 6.25 percent tax rate to arrive at the amount of tax due: $2,000,921.57.

Alpine asserts that the Comptroller=s calculation is incorrect because the Comptroller refused to issue sales tax permit numbers to each of Alpine=s independent salespersons, thereby precluding Alpine=s salespersons from completing resale exemption certificates for sales that should not have been included in the gross receipts used by the Comptroller to calculate back taxes. *See* Tex. Tax Code Ann. ' 151.054(a) (West 2002) (except for certain alcoholic beverage sales, Aall gross receipts of a seller are presumed to have been subject to the sales tax unless a properly completed resale or exemption certificate is accepted by the seller@); *id.* ' 151.302(a) (West 2002) (AThe sale for resale of a taxable item is exempted from the taxes imposed by this chapter.@); *id.* ' 151.152(b) (West Supp. 2004) (resale certificate must state sales tax permit number).

The Comptroller responds that Alpine confuses resale certificates and exemption certificates. The purpose of resale certificates is to prevent double taxation. *Sharp v. Clearview Cable TV, Inc.*, 960 S.W.2d 424, 426 (Tex. App.CAustin 1998, pet. denied). In section 151.024, the legislature authorized the Comptroller to treat certain salesmen, representatives, peddlers, or canvassers as the mere agents of a dealer, distributor, supervisor, or employer. *See* Tex. Tax Code Ann. ' 151.024. The dealer, distributor, supervisor, or employer is then treated as the actual retailer. *See id.* When section 151.024 appliesCas the Comptroller proved it applies hereCthe relationship between the dealer, distributor, supervisor, or employer (Alpine) and its salespersons is that of principal and agent, not purchaser and seller. Because Alpine is treated as the retailer for tax purposes, the Comptroller is not required to provide sales tax permit numbers to each of Alpine=s independent salespersons.[12]

Exemption certificates, on the other hand, are used to certify that a certain sale is exempt from sales and use tax. No sales tax permit number is required to obtain exemption certificates, which are downloadable at no charge from the Comptroller=s website. The Comptroller allows direct sales organizations to accept exemption certificates from its salespersons and report any exempt sales to the Comptroller. *See* Letter Op. Tex. Comptroller No. 9907537L (1999). We therefore reject Alpine=s contention that the Comptroller is not entitled to summary judgment on its counterclaim due to the Comptroller=s failure to issue sales tax permit numbers to each of Alpine=s salespersons. The only other arguments Alpine presents to contest the Comptroller=s counterclaim are the same arguments presented in

---

[12] Alpine has not argued that double taxation could result from the Comptroller=s denial of sales tax permits to Alpine=s salespersons or the Comptroller=s treatment of Alpine as a retailer.

20

Alpine=s first five issues.  Because we have already overruled each of these issues, we overrule Alpine=s final issue on the Comptroller=s counterclaim.

## CONCLUSION

The Comptroller proved as a matter of law that Alpine is a direct sales organization.  The Comptroller also proved that it determined that treatment of Alpine as a retailer for tax purposes is necessary for administrative efficiency.  The Comptroller=s imposition of tax directly against AlpineCas opposed to imposition of the tax against Alpine=s individual salespersonsCdoes not violate the commerce clause, due process, or equal protection.  Finally, the Comptroller proved as a matter of law that it was entitled to summary judgment on its counterclaim.  We therefore affirm the district court=s summary judgment in favor of the Comptroller.

_____

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed:   July 15, 2004